UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DAVID SLOANE,          )
                               )
     Petitioner,         )
                               ) Civil Action No. 04-40075-DPW
     v.                 )
                               )
DAVID L. WINN,         )
                               )
     Respondent.      )

**MEMORANDUM OF RESPONDENT DAVID L. WINN
IN OPPOSITION TO PETITIONER'S REQUEST FOR RELIEF
AND IN SUPPORT OF MOTION TO DISMISS**

The petitioner David Sloane, an inmate at Federal Medical Center, Devens, seeks

habeas relief under 28 U.S.C. § 2241, alleging that the Federal Bureau of Prisons

("BOP") has incorrectly calculated credit against his sentence for good conduct time and

has improperly applied a December 2002 BOP change in policy concerning placement in

Community Corrections Centers ("CCCs").  For the reasons stated below, the petition

fails to state a claim upon which relief can be granted and must therefore be dismissed.

STATEMENT OF FACTS[1]

After pleading guilty on September 12, 2002, to one count of possession of child

pornography, the Petitioner was sentenced on December 12, 2002, by the United States

District Court for the Southern District of New York to a term of imprisonment of 27

months.  The Petitioner surrendered voluntarily to the custody of the BOP at the Federal

---

[1] In accordance with the standard of review upon a motion to dismiss, the well-pleaded factual allegations of the Petition are accepted as true for purpose of this motion. See Rockwell v. Cape Cod Hosp., 26 F.3d 254, 255 (1st Cir.1994).

Correctional Institution at Fort Dix, New Jersey, on April 2, 2003.  On March 31, 2004, the Petitioner was transferred to the Federal Medical Center, Devens, Massachusetts ("FMC Devens"), where he is presently incarcerated.

Pursuant to the BOP's established practice concerning the calculation of Good Conduct Time ("GCT") credits, the BOP has determined that Petitioner will be entitled to 105 days of GCT credited against his sentence, assuming good behavior, such that his projected release date is March 11, 2005.[2]  Also, the BOP has determined, in accordance with a new practice established in December 2002, that the Petitioner will be eligible for placement in a CCC (or halfway house) for the last ten percent of his sentence, beginning December 31, 2004.  The Petitioner contends that the BOP has incorrectly determined his GCT credits and that a correct calculation should yield 121.5 days of GCT.  Further, he contends that the December 2002 change in practice concerning CCC placement is unlawful and that he is entitled to be considered for a six month CCC placement.

On March 23, 2004, the Petitioner submitted an Inmate Request to Staff (Form BP-S148.055), thus initiating his pursuit of administrative remedies.  He has not, however, exhausted his administrative remedies.

## ARGUMENT

---

[2]  See  Declaration of Stephanie Scannell ("Scannell Decl."), Attachment "d," Sentence Monitoring Computation Data.  Petitioner received prior jail credit of seven days from March 1, 2002, through March 7, 2002.  Id.  In the event that all of his remaining Good Conduct Time is disallowed, Petitioner's full term expiration date is June 24, 2005.  Id.
The BOP's determination of Petitioner's GCT credits, assuming good behavior, is set forth in Attachment "a" to the Scannell Decl.

2

I.      THE BUREAU OF PRISONS' CALCULATION OF PETITIONER'S GOOD
        CONDUCT TIME IS CORRECT PURSUANT TO 18 U.S.C. § 3624(b)[3]

Petitioner asserts that the BOP incorrectly calculates his Good Conduct Time

("GCT") by substituting "years served" for "term of imprisonment" in 18 U.S.C.

§ 3624(b).  Petitioner alleges that, under the statute, he is entitled to 121.5 days of GCT,

whereas, under the BOP's interpretation of the statute, he gets 105 days.  Petitioner's

assertion is incorrect.

---

[3]  The Petitioner's claim that the BOP has improperly calculated his GCT credits should be dismissed under the traditional requirement that a prisoner must exhaust his administrative remedies before applying for habeas relief under 28 U.S.C. § 2241.  E.g., Rogers v. United States, 180 F.3d 349, 357-58 (1st Cir. 1999); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996); Gonzalez v. Perrill, 919 F.2d 1 (2d Cir. 1990); United States v. Flanagan, 868 F.2d 1544, 1546-47 (11th Cir. 1989).  Similarly, the Petitioner's challenge to the BOP policy regarding CCC placement, which is in effect a challenge to the conditions of his confinement, is subject to the strict statutory exhaustion requirement of 42 U.S.C. § 1997e(a).  See Booth v. Churner, 532 U.S. 731, 741 n.6 (2001) ("we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise").

A.      The Governing Statute; the BOP Regulation; and Program Statement
        5880.28

The federal statute governing GCT credits under the Sentencing Reform Act for all

offenses committed after November 26, 1996, appears at 18 U.S.C. § 3624(b).  The

statute provides:

> (b) Credit toward service of sentence for satisfactory behavior.--
>
> (1) Subject to paragraph (2), a prisoner who is serving a term of
> imprisonment of more than 1 year . . . may receive credit toward the
> service of the prisoner's sentence, beyond the time served, of up to
> 54 days at the end of each year of the prisoner's term of
> imprisonment, beginning at the end of the first year of the term,
> subject to determination by the Bureau of Prisons that, during that
> year, the prisoner has displayed exemplary compliance with
> institutional disciplinary regulations. . . .  Credit that has not been
> earned may not later be granted. . . . [C]redit for the last year or
> portion of a year of the term of imprisonment shall be prorated and
> credited within the last six weeks of the sentence. . . .

The implementing BOP regulation at 28 C.F.R. § 523.20 provides:

> **Good conduct time.**
>
> . . . Pursuant to 18 U.S.C. 3624(b), as in effect for offenses
> committed on or after April 26, 1996, the Bureau shall consider
> whether the inmate has earned, or is making satisfactory progress
> (see § 544.73(b) of this chapter) toward earning a General
> Educational Development (GED) credential before awarding good
> conduct time credit.
> (a) When considering good conduct time for an inmate serving a
> sentence for an offense committed on or after April 26, 1996, the
> Bureau shall award:
>        (1) 54 days credit for each year <u>served</u> (prorated when the
> time served by the inmate for the sentence during the year is less
> than a full year) if the inmate has earned or is making satisfactory
> progress toward earning a GED credential or high school diploma; or

4

(2) 42 days credit for each year <u>served</u> (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma.

(b) The amount of good conduct time awarded for the year is also subject to disciplinary disallowance (see Tables 3 through 6 in § 541.13 of this chapter).

28 C.F.R. § 523.20 (emphasis added).

The application of the statute and BOP regulation is explained in a BOP internal guideline, Program Statement 5880.28, <u>Sentence Computation Manual CCCA</u> ("PS 5880.28") (relevant portions are attached as Attachment "f" to the Scannell Decl.) Consistent with the statute and regulation, PS 5880.28 provides that, in determining credit to be applied to the last year or portion of the last year, the 54 days of credit per year earned by the model prisoner shall be prorated to 0.148 days of credit for every actual day served during good behavior (54/365 = 0.148). <u>Id</u>.[4]

Under the Petitioner's interpretation of § 3624(b), he should get 54 days of GCT credit for the first year of his sentence; another 54 days of credit for the second year of his sentence; and an additional 13.5 days of credit for the last three months of his sentence (or 15% of the 90 days), for a total of 121.5 days. Under his theory, he would get credit

---

[4] The Program Statement sets forth a mathematical model that is straight-forward in concept. It establishes a series of computations that adjust for the fact that each additional day of GCT credit results in one day less of time served. The days of credit and days of time served each need to be adjusted until the ratio of credit to time served (0.148) is proper. The calculations applicable to the Petitioner are set forth in Exhibit 1 hereto.

for the 90-day portion of the last year of his sentence, even though he will never have

served a single day of that last year, and, in fact, will not even have served out the entirely

of his second year.  The Petitioner's theory is flatly inconsistent with the statutory

requirement that credit be given "at the end of each year of the prisoner's term of

imprisonment" (emphasis added), and that "credit for the last year or portion of a year of

the term of imprisonment shall be prorated. . . ."  Stated another way, if, as the Petitioner

asserts, "term of imprisonment" were interpreted to mean "term of the sentence," it would

be impossible for the BOP to give credit "at the end of each year of the prisoner's term of

imprisonment," since the petitioner would, under his theory, no longer be under BOP

custody during his last year.

The plain meaning of § 3624(b) supports the BOP's position. The statute sets forth

the yearly occasion for the determination of each year's GCT credit: "at the end of each

year of the prisoner's term of imprisonment."  18 U.S.C. § 3624(b).  At that time, the BOP

is to examine the prisoner's record of conduct over the year past and decide whether that

prisoner has shown "exemplary compliance with institutional disciplinary regulations."

18 U.S.C. § 3624(b)(1).  Thus, the GCT statute operates on a yearly, ongoing basis, as

time is served, until the sentence is satisfied.  It logically follows that if a prisoner cannot

receive their 54 days of GCT until after each year of the term is complete, then a prisoner

cannot receive any GCT for time not actually served.

The statute also provides, "Credit that has not been earned may not later be

granted."  Thus, the language clearly indicates that GCT credit must be earned.

Petitioner's interpretation runs afoul of the plain language of the statute.  If GCT credit were awarded based on length of sentence, as Petitioner urges, credit would be awarded for time not actually spent in prison, in other words, credit given that was never actually earned.

The statutory language is not ambiguous.  But if it is, the BOP's interpretation is entitled to substantial deference.  It is set forth in a duly promulgated regulation, and consequently is entitled to full deference under Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837 (1984).  See Pacheco-Camacho v. Hood, 272 F.3d 1266, 1270 (9th Cir. 2001), cert. denied, 535 U.S. 1105 (2002).  Under Chevron, the BOP's regulation is to be upheld if it is "based on a permissible construction of the statute."  467 U.S. at 843.  The discussion above demonstrates that the BOP's interpretation meets this standard.

The only two circuit courts to have considered the issue raised here have upheld the BOP position.  In Pacheco-Camacho the Ninth Circuit rejected the same argument made by the Petitioner here.  The court noted that the petitioner's argument in that case would "confer upon the prisoner a bonus during his last year of imprisonment."  272 F.3d at 1269.  After examining the statutory language, the court concluded, "Nothing in the statute clearly suggests that Congress intended to give the prisoner such a windfall in his last year."  Id.  The court further concluded that the BOP's implementing regulation was

7

entitled to <u>Chevron</u> deference and that it reflected a permissible interpretation of the statute.  <u>Id</u>. at 1270-1271.[5]

The Court of Appeals for the Sixth Circuit, in two unpublished opinions, has also upheld the BOP's approach to determining GCT credits.  <u>See</u> <u>Brown v. Hemingway</u>, 53 Fed. Appx. 338, 2002 WL 31845147 (6th Cir. 2002) ("The Bureau's interpretation is reasonable in light of the statutory language."); <u>Williams v. Lamanna</u>, 20 Fed. Appx. 360, 2001 WL 1136069 (6th Cir. 2001) ("The statute clearly states that good conduct time is awarded on time served by the inmate, not on the time that might potentially be served by the inmate.").[6]

The Petitioner relies on one case to the contrary, <u>White v. Scibana</u>, 2003 WL 23171593 (W.D. Wis. 2003).  The Respondent suggests that the <u>White</u> opinion is not well reasoned.  The court in <u>White</u> gives no consideration to the statutory language that credit be established "at the end of each year of the prisoner's term of imprisonment," and offers no analysis of how, under the Petitioner's theory, "credit for the last year or portion of a

---

[5]  The <u>Pacheco-Camacho</u> court rejected a claim that the rule of lenity compelled Petitioner's interpretation.  The rule of lenity resolves ambiguities in a criminal defendant's favor; however, it does not apply when, as in this instance, the question has been addressed by a regulation validly adopted through the rulemaking process.  272 F.3d at 1271-72.

[6]  Pursuant to Sixth Circuit Rule 28(g), copies of these opinions are attached as Exhibits 2 and 3.  Several district court decisions are in accord.  <u>Martinez v. Wendt</u>, 2003 WL 22456808 (N.D. Tex. 2003); <u>Webb v. Deboo, et al.</u>, Case No. 3:03CV961, Dorsey, J., Ruling and Order dated Sept. 22, 2003 (D. Ct.) (Exhibit 4); <u>De Gerolamo v. White</u>, Case No. 03CV139, Wolfson, F., Opinion Dated May 20, 2003 (D. N.J.) (Exhibit 5); <u>see</u> <u>also</u> <u>Montalvo v. United States</u>, 174 F.Supp.2d 10, 14 (S.D.N.Y. 2001).

year . . . shall be prorated . . . ."  The court in <u>White</u> also fails to acknowledge the statutory command that "credit that has not been earned may not later be granted."  Accordingly, <u>White</u> should not be followed.  The BOP's calculation of Petitioner's GCT credit is correct, and the Petitioner's position without merit.

II.    THE BUREAU OF PRISONS HAS PROPERLY APPLIED 18 U.S.C.
       § 3624(c) TO LIMIT THE PETITIONER'S ELIGIBILITY FOR
       PLACEMENT IN A COMMUNITY CORRECTIONS CENTER TO THE
       LAST TEN PERCENT OF HIS SENTENCE, NOT TO EXCEED SIX
       MONTHS

Prior to December 2002, it was the policy of the BOP, as expressed in an Inmate Handbook and a BOP document entitled Program Statement Number 7310.04 (December 16, 1998) (portions attached as Exhibit 6), that it could consider inmates for placement in a CCC for more than the last ten percent of an inmate's term of imprisonment or more than the last six months of the sentence, if appropriate.  The Petitioner alleges that when he accepted the plea agreement he relied on his counsel's advice that he would be able to serve the last six months of his incarceration in a halfway house.  Petition at p. 1.

On December 13, 2002, the Office of Legal Counsel ("OLC") of the United States Department of Justice issued an opinion concluding that the Federal Bureau of Prisons' ("BOP") former policy of initially designating to CCCs certain defendants sentenced to terms of imprisonment was inconsistent with 18 U.S.C. §§ 3621, 3624(c), and the U.S. Sentencing Guidelines and therefore unlawful.  This opinion (the "OLC Memorandum," attached as Exhibit 7) also indicated that the BOP's past practice of transferring offenders to CCC's for a period exceeding the time limit specified in 18 U.S.C. § 3624(c) (the last

9

ten percent of the term of imprisonment, not to six months) was in violation of 18 U.S.C.

§ 3624(c) and thus impermissible.  See id. at n.6.  Subsequently the BOP established

procedures for implementing the policy change.  See Exhibit 8 (December 20, 2002, BOP

Memorandum to BOP Chief Executive Officers.

The Petitioner does not develop any independent argument concerning the

December 2002 change in policy, but instead simply refers to a number of district court

opinions that have ruled that the change of policy is unlawful.  See, e.g., Monahan v.

Winn, 276 F.Supp.2d 196, 198 (D. Mass. 2003) (collecting cases).[7]  Accordingly, the

Respondent herein will address the major arguments presented in those other cases.

At the outset, the Respondent notes that other courts have upheld the validity of

the BOP policy.  Cohn v. Federal Bureau of Prisons, 302 F.Supp.2d 267 (S.D.N.Y. 2004);

Benton v. Ashcroft, 273 F.Supp.2d 1139 (S.D. Cal. 2003), appeal docketed, 9th Cir. No.

03-56343.  Most of the courts that have ruled against the government have done so in the

context of so-called "front end" cases, where the policy has been applied to prohibit

placement in a CCC at the outset of the prisoner's sentence.  In contrast, a number of

courts have upheld the policy as applied to the "back end" situation, such as that

presented here, where the Petitioner seeks to increase the period of his CCC placement at

---

[7]  And see Grimaldi v. Menifee, 2004 WL 912099 (S.D. N.Y. Apr. 29, 2004);
Crowley v. Federal Bureau of Prisons, 2004 WL 516210 (S.D. N.Y., March 4, 2004);
DiStefano v. Federal Bureau of Prisons, 2004 WL 396999 (S.D. N.Y., March 4, 2004);
Zucker v. Menifee, 2004 WL 102779 (S.D. N.Y., Jan 21, 2004); Colton v. Ashcroft, 299
F.Supp.2d 681 (E.D. Ky., Jan. 15, 2004).

the tail end of his sentence.  See Turano v. Winn, Civ. No. 03-40188-EFH (D. Mass.,

Order of Dismissal dated Jan. 7, 2004); Goldings v. Winn, Civ. No. 03-40161-WGY (D.

Mass., Memorandum and Order dated Oct. 23, 2003, appeal docketed, No. 03-2633 (1st

Cir. argued May 7, 2004); United States v. Mikutowicz, 2003 WL 21857885 (D. Mass.

Aug. 6, 2003); Rothberg v. Winn, 03-CV-11308-RGS (D. Mass. 2003); Kennedy v.

Winn, Civ. No. 03-10568-MEL (D. Mass. July 9, 2003).[8]

 A. The New BOP Policy Is a Correct Application of the Law

 In reviewing an agency's construction of a statute, courts apply the two-pronged

test set forth in Chevron USA, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837

(1984).  First, a court must determine whether Congress has directly spoken to the precise

question at issue.  Id. at 842.  "If the intent of Congress is clear, that is the end of the

matter; for the court, as well as the agency, must give effect to the unambiguously

expressed intent of Congress."  Id. at 843.  Second, if the statutory language is silent or

ambiguous, deference is then to be afforded the agency's interpretation if it is based on a

"permissible" construction of the statute.  Id.  While an interpretation that has not been

promulgated pursuant to the notice and comment rules of the APA, or reduced to a formal

regulation, is not entitled to "full" deference, a permissible interpretation is still entitled to

respect.  Reno v. Koray, 515 U.S. 50, 61 (1995) ("BOP's internal agency guideline . . . is

still entitled to some deference, since it is a permissible construction of the statute"); see

---

 [8]  Copies of these decisions are collected in Exhibit 9 hereto.

also Alaska Dept. of Env. Cons. v. Environmental Protection Agency, – U.S. –, 124 S.Ct.

983, 1001 (2004); Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

    The starting point of analysis is 18 U.S.C. § 3624(c).  This section provides:

> **Pre-release custody**.  The Bureau of Prisons shall, to the
> extent practicable, assure that a prisoner serving a term of
> imprisonment spends a reasonable part, not to exceed six
> months, of the last 10 per centum of the term to be served
> under conditions that will afford the prisoner a reasonable
> opportunity to adjust to and prepare for the prisoner's re-entry
> into the community.  The authority provided by this
> subsection may be used to place a prisoner in home
> confinement.  The United States Probation System shall, to
> the extent practicable, offer assistance to a prisoner during
> such pre-release custody.

    There can be little doubt that this language limits the period for a prisoner's

placement in a CCC to the "last 10 per centum" of the prisoner's sentence of

imprisonment, "not to exceed six months."  It is true that the court in Iacaboni v. United

States, 251 F.Supp.2d 1015 (D. Mass. 2003), concluded that § 3624(c) has nothing to do

with community confinement but instead merely authorizes the BOP to transfer an

offender to home confinement for up to six months of the final portion of his sentence.

251 F.Supp.2d at 1029-30.  But this conclusion unsupported by the statutory language and

is discredited by history of the statute.  When section 3624(c) was first enacted in 1984, it

did not include the sentence regarding "home confinement."  Pub. L. 98-473, 98 Stat.

2009.  That sentence was added by the Crime Control Act of 1990.[9]  Had Congress

---

[9]  Pub. L. No. 101-647, 1990 U.S.C.C.A.N. 4789, 4913.  The legislative history of
(continued...)

intended to limit the application of § 3624(c) to home confinement, it surely would have said so in 1984. Accordingly, § 3624(c) applies to CCC placement.

Some courts have concluded that the temporal limitation of § 3624(c) is subject to a broader authority granted by 18 U.S.C. § 3621(b). E.g., Monahan v. Winn, 276 F.Supp.2d at 212. This latter section grants the BOP the exclusive authority to "designate the place of the prisoner's imprisonment." It further provides that the BOP "may designate any available penal or correctional facility that meets the minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable, considering . . . [five specified factors]." Some district courts have concluded that a "penal or correctional facility" includes a CCC, and the broad language of this section therefore grants the BOP authority to place an inmate in a CCC at any time, including for a period longer than the period authorized in § 3624(c). Under this interpretation, the BOP could, in theory, designate a convicted murderer sentenced to life imprisonment to serve his entire sentence in a halfway house.

This argument cannot be squared with the plain meaning of § 3624(c) and elemental rules of statutory construction. It simply cannot be true that § 3624(c) limits placement in a CCC to the shorter of six months or the last 10 percent of the prisoner's term, and also be true that § 3621(b) allows placement in a CCC at any time during the prisoner's sentence. Such an interpretation of § 3621(b) would effectively render

---

[9](...continued)
this amendment is discussed infra.

§ 3624(c) a nullity. It is well settled that a provision of a statute will not be read in a way that renders another provision of the same statute superfluous. Duncan v. Walker, 533 U.S. 167, 174 (2001); Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998).[10] In addition, "it is a basic principle of statutory construction that a specific statute . . . controls over a general provision . . . ." HCSC-Laundry v. United States, 450 U.S. 1, 6 (1981). Section 3624(c) is very specific as regards placement of offenders in CCCs. Section 3621(b), on the other hand, is general.

In Monahan v. Winn, 276 F.Supp.2d 196, 210-11 (D. Mass. 2003), the court argued that sections 3621(b) and 3624(c) accomplished two separate and ostensibly compatible objectives: section 3621(b) *allows* the BOP to designate a prisoner to a CCC at any time during the prisoner's sentence, while section 3624(c) *requires* the BOP to "assure" that the prisoner spends the last part of his sentence (10 percent, not to exceed six months) under pre-release conditions.[11] 276 F.Supp.2nd at 210-211 & n.11.

The fundamental flaw in this argument is that § 3621(b) does not contain the broad grant of authority that some courts have ascribed to it. Contrary to the view expressed

---

[10] And see Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer, 515 U.S. 528, 533 (1995) ("'[W]hen two statutes are capable of co-existence, . . . it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective.'" (Quoting Morton v. Mancari, 417 U.S. 535, 551 (1974), and Pittsburgh & Lake Erie R. Co. v. Railway Labor Executives' Ass'n, 491 U.S. 490, 510 (1989)).

[11] Accord Cato v. Menifee, No. 03-Civ. 5795(DC), 2003 WL 22725524 (S.D.N.Y., Nov. 20, 2003). Contra, United States v. Mikutowicz, 2003 WL 21857885 (D. Mass. Aug. 6, 2003) ("The six month figure is a maximum time within that final ten percent"); Kennedy v. Winn, Civ. No. 03-10568-MEL (D. Mass., July 9, 2003).

<u>Monahan</u>, the history of section 3621(b) demonstrates that Congress did not establish a broad discretion in the BOP to place a prisoner in a CCC at any time during the prisoner's term of imprisonment.  Before the Sentencing Reform Act of 1984, 18 U.S.C. § 4082(b), which was the predecessor to § 3621(b), did indeed give the Attorney General broad authority to place a prisoner in a CCC.  It provided in part that the Attorney General "may designate as a place of confinement any available, suitable, and appropriate institution or facility . . . ."  18 U.S.C. § 4082(b) (1982).  The words "penal or correctional" did not appear in this section.  And § 4082(f) provided that, "[a]s used in this section – the term 'facility' shall include a residential community treatment center."  <u>Id</u>.  But when the law was re-written in 1984, Congress made significant changes.  First, Congress added the modifying words "penal or correction," so that now the BOP, under the new § 3621(b), "may designate any available <u>penal or correctional</u> facility. . ." (emphasis added).  Pub. L. 98-473, Title II, § 212(a)(2), 98 Stat. 2007 (1984).  Second, Congress stripped the definition of "facility" from the new section 3621.[12]  <u>Id</u>.  Third, a new section 3624(c) was added to create an express but carefully circumscribed authority in the BOP to place a prisoner in a CCC for the last ten percent, not to exceed six months, of the prisoner's term of imprisonment.  <u>Id</u>. 98 Stat. 2008.  The only possible explanation for these

---

[12]  A similar definition of "facility" was retained in the substantially-revised version of § 4082, but that section now addresses escape from confinement and sharing of information about prisoners confined in community treatment centers.  18 U.S.C. § 4082(c).  It is therefore of no relevance here.

statutory changes is that Congress intended to modify the BOP's traditional authority so as to limit the authority to place a prisoner in a CCC.

This conclusion is also consistent with the larger scheme of the Sentencing Reform Act of 1984. Placement of an offender in a CCC is expressly authorized as a condition of probation. 18 U.S.C. § 3563(b). It is also authorized as a condition of supervised release. See United States v. Bahe, 201 F.3d 1124 (9th Cir. 2000). It is not authorized as a permissible part of a term of imprisonment. See 18 U.S.C. §§ 3581, 3582.[13] Moreover, the U.S. Sentencing Guidelines, which are a congressionally-authorized implementation of the Sentencing Reform Act and thus entitled to substantial deference, parallel this scheme. The Guidelines clearly indicate that "imprisonment" does *not* include placement in a CCC. See United States v. Cintrón-Fernández, 356 F.3d 3340 (1st Cir. 2004).[14] It would be incongruous, to say the least, to interpret § 3621(b) to authorize the BOP to do what is prohibited by the sentencing provisions of Title 18 and the Sentencing Guidelines.

---

[13] Correction and rehabilitation, which are recognized objectives of CCC placement, are appropriate goals of probation and supervised release. See 18 U.S.C. §§ 3563(b), 3553(a)(2)(D); S. Rep. 98-225 at 124 ("the primary goal of [supervised release] is to ease the defendant's transition into the community . . . , or to provide rehabilitation"), reprinted in 1984 U.S.C.C.A.N. at 3307; and see Johnson v. United States, 529 U.S. 53, 59-60 (2000). In contrast, "imprisonment is *not* an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a) (emphasis added); see S. Rep. No. 225 at 67 n.140, 76, reprinted in 1984 U.S.C.C.A.N. at 3250, 3259. This further supports the distinction between imprisonment and placement in a CCC.

[14] Consistent with the overall scheme of Title 18's sentencing provisions, the Sentencing Guidelines authorize placement in a CCC as a condition of probation, USSG § 5C1.1(c)(3), or as a condition of supervised release  USSG § 5C1.1(d)(2).

Accordingly, there is no merit to the contention that § 3621(b) authorizes a prisoner's placement in a CCC for longer than the period prescribed by § 3624(c).

Further, the argument advanced by the court in Monahan would in fact effectively negate the temporal limitation of § 3624(c). The directive of § 3624(c) is a qualified one and does not mandate any pre-release placement or give rise to an enforceable right on the part of the prisoner. See United States v. Restrepo, 999 F.2d 640, 645 (2nd Cir. 1993) ("the statute does not on its face require the Bureau to ensure that all prisoners participate in such a program, but only to do so if practicable."); United States v. Loughlin, 933 F.2d 786, 789 (9th Cir. 1991) ("Nothing in the language of section 3624(c) mandates that all prisoners pass through a community treatment center en route to free society."). Consequently (and particularly in the circumstances presented here), the nature of the "discretion" that the court in Monahan would have the BOP exercise under section 3621(b) is for all practical purposes identical to that exercised under section 3624(c) – the only difference being the temporal limit on CCC placement. Thus, the distinction drawn by the court in Monahan makes no practical sense. And there is no hint of a congressional intent to authorize two analytically separate but practically redundant systems for administering community confinement.[15] In short, the analysis in Monahan should be rejected.

---

[15] In different contexts, the BOP does distinguish between discretionary CCC placement by the BOP and mandatory CCC residence resulting from a condition of probation or condition of supervised release. See App. 158-59.

17

The Supreme Court's decision in <u>Reno v. Koray</u> does not support the Petitioner's position. The issue in <u>Koray</u> was whether time spent at a CCC before trial pursuant to a § 3142(c) bail release order, while in the custody of Pretrial Services, counted as "official detention" for purposes of prior custody credits under 18 U.S.C. § 3585(b). <u>Koray</u>, 515 U.S. at 54-55. The Court held that such confinement was not "official detention" for purposes of that statute. The prisoner in that case argued that the nature of his confinement was no different than CCC placement while in BOP custody pursuant to the BOP's then-extant policy of placing prisoners in CCCs under its pre-December 2002 interpretation of § 3621(b). 515 U.S. at 62. The Supreme Court simply noted the prisoner's argument, and, without opining on the validity of the BOP's interpretation of § 3621(b), rejected the argument on the ground that CCC placement in the custody of the BOP is different than placement in the custody of Pretrial Services. <u>Id</u> at 62-63. The Supreme Court did not opine on the proper interpretation of § 3621(b).

B.    <u>The Legislative History Supports the BOP's Position</u>

The legislative history supports the BOP's position.[16]  Section 3581(a) of Title 18 U.S.C. provides that a person found guilty of any offense "may be sentenced to a term of imprisonment."  In drafting this section, the Senate Judiciary Committee did not follow a recommendation which would have precluded imprisonment for persons committing the lowest class of crimes.  In the bill submitted to the Senate floor (later enacted), every offense under the Act could lead to a term of prison.  S. Rep. 225 at 113, <u>reprinted in</u> 1984 U.S.C.C.A.N. at 3297.  In justifying this provision, the Committee noted that "the shock value of a brief period *in prison* may have significant special deterrent effect."  <u>Id</u>. at 114 (1984 U.S.C.C.A.N. at 3297) (emphasis added).  The Committee added that "[a] sentence imposed by a judge pursuant to section 3581 will represent the actual period of time that the defendant will spend  *in prison*[.]"  <u>Id</u>. at 115 (1984 U.S.C.C.A.N at 3298) (emphasis added).  <u>See</u> <u>Benton v. Ashcroft</u>, 273 F.Supp.2d 1139 (S.D. Cal. 2003) (upholding the BOP policy change), <u>appeal docketed</u>, 9th Cir. No. 03-56343.  Thus, in considering and voting on the Senate bill, the Committee apparently did not contemplate that an offender sentenced to "imprisonment" would be incarcerated in any facility other than a prison, even if he committed only a minor infraction.

---

[16]  <u>See</u> <u>Arnold v. United Parcel Service, Inc.</u>, 136 F.3d 854, 858 (1st Cir. 1998) ("If the text is not unambiguously clear, however, we are obliged to turn to other sources to discern the legislature's meaning. One important source, of course, is the legislative history.").

The court in Iacaboni, in discussing the meaning of § 3621(b), relied on an excerpt from the Senate Judiciary Committee report, which noted that "[p]roposed 18 U.S.C. § 3621(b) follows existing law . . . ." The court found in this excerpt an intent that the BOP retain its preexisting authority to place prisoners in CCCs. 251 F.Supp.2d at 1025, quoting from S. Rep. No. 225 at 141-42. Not only did the district court fail to recognize the significance of the 1984 statutory changes (discussed above), but the court omitted important language from its quote. The full quote from the Judiciary Committee states: "Proposed 18 U.S.C. § 3621(b) follows existing law *in providing that the authority to designate the place of confinement for federal prisoners rests in the Bureau of Prisons*." Id. at 141, reprinted in 1984 U.S.C.C.A.N. at 3324 (omitted portion in italics). A footnote at this part of the Committee Report cites to McIntyre v. United States, 271 F. Supp. 991, 999-1000 (S.D. N.Y. 1967), aff'd 396 F.2d 859 (2nd Cir. 1968). In that case the court ruled that a federal court has no power to order a term of imprisonment to run concurrently with a state sentence, since that would be tantamount to designating the prisoner's place of confinement, which is a power entrusted to the Attorney General, not the sentencing court. In its full context, the Judiciary Committee's statement is simply an affirmation of the fact that the BOP, not the sentencing court, has exclusive power to designate the place of imprisonment. It says nothing about whether § 3621(b) encompasses the authority to place a prisoner in a CCC.

As discussed above, the sentence in 3624(c) regarding "home confinement" was added by the Crime Control Act of 1990.[17]  As introduced, the bill originally included amendments to Title 18 meant to enlarge BOP's power "to place inmates in community corrections programs and home confinement."  H.R. Rep. 101-681(I), at 73 (Sept. 5, 1990), reprinted in 1990 U.S.C.C.A.N. 6472, 6477.  Section 1404 of Title XIV would have amended 18 U.S.C. § 3621(b) to strike the phrase "penal or correctional facility that meets minimum standards of health and habitability established by the Bureau," and replace it with "suitable, and appropriate institution, facility, or program, and where appropriate, to a home detention program."  H.R. 5269, 101st Cong. (1990), 136 Cong. Rec. 27, 316, 27,330 (Oct. 3, 1990) (reproduced at App. 72).[18]  The report of the House Judiciary Committee explained:

> Sections 1403 and 1404 address the Federal Bureau of Prisons' authority to place inmates in community corrections programs and home confinement.  Currently, the Bureau of Prisons can only place an inmate in a Community Correction Center for up to six months or for the last 10 percent of his or her sentence, whichever is shorter.  Section 1403 would authorize the Bureau of prisons to place certain non-violent offenders in community facilities for longer time periods at the end of their sentences so that they can better readjust to society.

---

[17]  Pub. L. No. 101-647, 1990 U.S.C.C.A.N. 4789, 4913.

[18]  Sections 1403 and 1404 of the bill (H.R. 5269), would have abolished the limit on the length of the pre-release transition period in 18 U.S.C. § 3624(c) (six months or 10 percent of the sentence, whichever is shorter) and authorized the BOP to place prisoners in community or home confinement for longer periods.  Id.

> Section 1404 restores the Bureau of Prisons'
> previously existing authority to designate an appropriate place
> for offenders to serve their sentences, including Community
> Correction Centers or home confinement.

H.R. Rep. 101- 681(I) at 140, reprinted in 1990 U.S.C.C.A.N. at 6546 (reproduced at

App. 77.  Plainly, there would have been no need to "restore" this power if BOP had it in

the first place.  The reference to "previously existing" is also consistent with the point

made above that, after the Sentencing Reform Act recodified 18 U.S.C. § 4082(g) at

section 3621(b), and deleted the former allowance for BOP to place inmates in "facilities"

(including in a "residential community treatment center"), that deletion did in fact strip

BOP of a pre-existing power to make such placements.[19]

The amendment was opposed by the Department of Justice and certain members of

the House.  The latter noted that proposed Section 1404 "would permit the Bureau to

place drug felons in treatment programs, thus endangering the community.  The American

public wants dangerous felons in jail, not in therapy programs or home detention."  H.R.

Rep. 101-681(I) at  338, reprinted in 1990 U.S.C.C.A.N. at 6618 (Dissenting Views).

During the ensuing floor debate on H.R. 5269, one of the Committee dissenters,

---

[19]    These conclusions find further support elsewhere in the House Report, where the Judiciary Committee noted: "Section 1404 amends 3621(b) of title 18, United States Code, to permit the Bureau of Prisons to assign inmates to any 'suitable, and appropriate institution, facility, or program, and where appropriate, to a home detention program.'  Currently, the Bureau of Prisons can only confine inmates who committed offenses after November 1987, in penal or correctional facilities, except as provided in 18 U.S.C. section 3624." H.R. Rep. 101-681(I) at p. 144, reprinted in 1990 U.S.C.C.A.N. at 6550.

Representative McCollum, offered an amendment deleting sections 1403 and 1404 and

retaining the existing limits on BOP discretion regarding community confinement, but

adding a sentence expressly stating that home confinement was permissible during the

six-month-ten-percent release period.  Representative McCollum explained his

amendment, stating:

> My amendment would give them that opportunity to allow
> some home confinement with or without monitoring by
> telephonic or electronic signaling devices.  The reason I am
> offering this amendment is because in the language of the bill
> as it is now out here before us, there has been a concern I
> have had for some time that we are giving a whole lot more
> authority to the Bureau of Prisons than we really ought to.  I
> do not think that was anyone's intent.  The language in the
> bill, without being amended, would have effectively allowed
> the Director and the Bureau of Prisons to release any prisoner
> for any length of time under home custody or whatever, so
> they would not have had to have served a day in prison.

136 Cong. Rec. 27587-88 (Oct. 4, 1990).[20]  Representative McCollum also explained that

his proposed provision authorizing home confinement was "in conformity with current

law" – thus suggesting that he believed the BOP already had authority to order home

detention during the transition period.  Id.  The McCollum amendment was approved by

the House on a voice vote, and the original language expanding the BOP's authority was

thus defeated.  Id. at 27588.  The more limited amendment was subsequently incorporated

into the final bill that was enacted.  See Pub. L. 101-647, § 2902, 104 Stat. 4913.  This

legislative history strongly supports the conclusion that § 3624(c) reflects a strict

---

[20]  Also at 136 Cong. Rec. H8842-04, *H8917, 1990 WL 146287 (Oct. 4, 1990).

limitation on the BOP's authority to designate prisoners to community confinement centers.[21]

> C.    The BOP's Change in Procedure Did Not Violate the Administrative Procedure Act ("APA")

There is no merit to the assertion that the change in BOP practice was made in violation of the notice and comment requirements of section 553 of the APA, 5 U.S.C. § 553. The notice and comment provisions of the APA apply "only to so-called 'legislative' or 'substantive' rules; they do not apply to 'interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice.'" Lincoln v. Vigil, 508 U.S. 182, 196 (1993) (citing 5 U.S.C. § 553(b)(3)(A)). Interpretive rules "advise the public of the agency's construction of the statutes and rules which it administers," Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 99 (1995) (internal quotations omitted), whereas legislative rules create rights and obligations that are "not already outlined in the statute itself." Warder v. Shalala, 149 F.3d 73, 80 (1st Cir. 1998); see Syncor Int'l Corp. v. Shalala, 127 F.3d 90, 94 (D.C. Cir. 1997).

Notably, the BOP's past practice of placing some inmates in CCCs for longer than the six-months-ten-percent period, was described in a BOP Program Statement that itself

---

[21] The Petitioner seeks an order directing the Respondent to transfer the Petitioner to a CCC "and/or to Home Confinement" no later than six months prior to his release date. However, the general designation authority of § 3621(b) plainly does not authorize home confinement. Since § 3621(b) is the only conceivable legal basis for exceeding the ten percent limit applicable under § 3624(c) in this case, the Petitioner's request for an order transferring him to home confinement cannot possibly be sustained.

was not the product of notice and comment and was not a "legislative" or "substantive" rule.  See Reno v. Koray, 515 U.S. at 61 (BOP Program Statement concerning credit for time spent at community treatment center "is akin to an 'interpretive rule' that "do[es] not require notice and comment'"); see also Gunderson v. Hood, 268 F.3d 1149, 1154 (9th Cir. 2001) (BOP program statement relating to eligibility for early release was an "interpretive" rule).  The December 2002 change in BOP procedure was simply a revision to this Program Statement and similarly is not subject to notice-and-comment rulemaking.[22]

More significantly, the BOP's policy change does not create any new law or stake out any new ground that is not already set forth in the statute itself.  The court's decision in Warder is therefore controlling here.  There the court held that the administrative ruling at issue was an interpretive rule not subject to the APA's notice and comment requirements because "[t]he Ruling does not stake out any ground 'the basic tenor of which [was] not already outlined in the law itself.'"  Id. at 80-81, quoting La Casa Del Convaleciente v. Sullivan, 965 F.2d 1175, 1178 (1st Cir. 1992).  As in Warder, the BOP's policy directive "does not create any new law or extra-statutory obligation," or

---

[22]  Unlike the prior BOP practice, the new practice is binding on BOP employees, but only by force of the governing statute, 18 U.S.C. § 3621(b) and U.S.S.G. § 5C1.1, not by force of any agency regulation.  See Warder, 149 F.3d at 82-83 ("The fact that the Ruling binds HCFA carriers and ALJs is entirely consistent with its status as an interpretative rule.").

"change an existing law or regulation."  See Benton v. Ashcroft, 273 F.Supp.2d at 1147.

It simply corrects past error and applies existing law.

The fact that the BOP procedure change affects numerous inmates does not

transform it into a "legislative" rule.  That a policy has general application merely defines

it as a "rule" under APA, see 5 U.S.C. § 551(4); it does not answer the question whether a

rule is legislative or interpretive.  In Warder the court observed that a rule's public impact

is of little importance in determining whether the notice and comment requirement

applies.  149 F.3d at 80 n.6 (noting that the Supreme Court "wholly ignored" the public

impact in Guernsey and Reno v. Koray).

Nor is there any merit to the argument that notice and comment is required because

the new BOP practice represents a departure from past BOP practice.  The court in

Warder rejected such an argument, stating, "The legal point is clear enough: in order for

notice and comment to be necessary, 'the [later] rule would have to be inconsistent with

another rule having the force of law, not just any agency interpretation regardless of

whether it had been codified."  Id. at 81, quoting Chief Probation Officers v. Shalala, 118

F.3d 1327, 1337 (9th Cir. 1997).  In short, there is no procedural defect in the BOP

procedure change.[23]

---

[23] The Government respectfully disagrees with the decisions in Iacaboni, 251 F.
Supp. 2d at 103-40, and Monahan, 276 F.Supp.2d at 212-15, holding otherwise.  And see
Mallory v. United States, 2003 WL 1563764 (D. Mass. 2003) (Woodlock, J.)

C.    The BOP Procedure Change Is Not Impermissibly Retroactive

A.    The Change In BOP Practice Does Not Violate the Ex
Post Facto Clause

A law violates the Ex Post Facto Clause when it punishes behavior that was not punishable at the time it was committed or increases the punishment beyond the level imposed at the time of commission.  U.S. Const., art. 1, § 10, cl. 1; see Garner v. Jones, 529 U.S. 244, 249-250 (2000); Collins v. Youngblood, 497 U.S. 37, 42, (1990).[24]  "[T]he focus of the ex post facto inquiry is not on whether a  . . . change produces some ambiguous sort of 'disadvantage,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punished." California Department of Corrections v. Morales, 514 U.S. 499, 506 n.3 (1995).

A new rule, regulation, or policy change that merely corrects an agency's erroneous interpretation of pre-existing law, even if it was a reasonable one, does not offend the Ex Post Facto Clause.  See, e.g., Metheney v. Hammonds, 216 F.3d 1307, 1310-1311 (11th Cir. 2002) (collecting cases).  The clause "does not prohibit . . . the correction of a misapplied existing law which disadvantages one in reliance on its continued misapplication."  Stephens v. Thomas, 19 F.3d 498, 500 (10th Cir. 1994) (finding no Ex Post Facto violation when department of corrections stopped applying

---

[24]  It is not clear that the Ex Post Facto Clause even applies to an Executive Branch agency's interpretation of a statute, particularly where the interpretation creates no new law but simply corrects a past erroneous interpretation.  Cf. Rogers v. Tennessee, 532 U.S. 451, 462 (2001) ("the Ex Post Facto Clause does not apply to judicial decisionmaking").

good-time-credit statute to prisoners with life sentences after state attorney general

informed department that this application was prohibited by statute); accord Cortinas v.

United States Parole Comm'n, 938 F.2d 43, 46 (5th Cir. 1991); Glenn v. Johnson, 761

F.2d 192, 194-95 (4th Cir. 1985); Caballery v. United States Parole Comm'n, 673 F.2d

43, 47 (2d Cir. 1982).  "The *ex post facto clause* of the Constitution does not give [a

prisoner] a vested right in . . . an erroneous interpretation" of law.  Mileham v. Simmons,

588 F.2d 1279, 1280 (9th Cir. 1979).

    Here, the BOP's procedure change did not change the applicable law.  Rather, the

change merely corrected an erroneous interpretation by the BOP of section 3624(c),

which since 1984 has imposed a temporal limit on the BOP's authority to designate an

inmate serving a term of imprisonment to a halfway house.  Accordingly, the Ex Post

Facto clause is not applicable here.  See Adler v. Menifee, 293 F.Supp.2d 363, 367 (S.D.

N.Y. 2003); United States v. Pena, 2003 WL 21197024, *3 (W.D. N.Y. 2003); Rothberg

v. Winn, 03-CV-10568 (D. Mass. 2003) (Stearns, J.).

    Furthermore, the BOP procedure change has not increased the punishment the

Petitioner will receive for his crime.  Instead, it has only potentially changed the place

where he will serve a portion of the last six months of his sentence of imprisonment.  In

Dominique v. Weld, 73 F.3d 1156 (1st Cir. 1996), the court held that changes in state

policies and regulations which caused the plaintiff to be terminated from a work release

program did not violate the Ex Post Facto Clause.  73 F.3d at 1161-62.  Without deciding

whether the Ex Post Facto Clause was applicable at all, the court concluded that the

changes did not increase the penalty by which the plaintiff's crime was punishable, but simply changed the conditions of his confinement. Id. at 1163.[25] The court's decision in Dominique is applicable here, and requires that the Petitioner's Ex Post Facto claim be rejected.

2.    The Change In BOP Practice Does Not Violate the
        Petitioner's Due Process Rights

Under a due process analysis, the Petitioner must demonstrate that he has a cognizable liberty interest in his placement in a CCC. In Sandin v. Conner, 515 U.S. 472 (1995), the Court held that disciplining a prisoner for 30 days in segregated confinement did not give rise to a liberty interest protected by the Due Process Clause. The Court held that, in the context of prison management systems, liberty interests protected by the Due Process Clause "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484.

In Dominique, the court applied the Sandin standard to a state prison inmate's claim that the revocation of his work release privileges violated due process. In Dominique, the inmate had participated successfully in a community work release program for three years before his privileges were revoked – not because of any conduct

_____

[25]  Accord United States v. Kramer, 2003 WL 1964489 *4-6 (N.D. Ill. 2003).

by the inmate, but because of state policy and regulatory changes. The court held that

under <u>Sandin</u> the inmate did not have a protected liberty interest in his participation in the

work release program. 73 F.3d at 1159-61. The court reasoned that the inmate's transfer

to a more secure facility "subjected him to conditions no different from those ordinarily

experienced by large numbers of other inmates serving their sentences in customary

fashion." <u>Id</u>. at 1160. The hardship "was not 'atypical' in relation to the ordinary

incidents of prison life." <u>Id</u>.[26]

      Even if the Petitioner could establish a protected liberty interest, any Due Process

claim would still fail. While the Due Process Clause encompasses some limitations on ex

post facto decision making, <u>see</u> <u>Rogers v. Tennessee</u>, 532 U.S. at 458, its force is more

limited. In <u>Rogers</u>, the Court stated that under the Due Process Clause, "a judicial

alteration of a common law doctrine of criminal law violates the principle of fair warning,

and hence must not be given retroactive effect, only where it is 'unexpected and

indefensible by reference to the law which had been expressed prior to the conduct in

issue.'" <u>Id</u>. at 462, <u>quoting</u> <u>Bouie v. City of Columbia</u>, 378 U.S. 347, 354 (1964).[27] In

the instant case, for the reasons stated earlier, the government's interpretation of

---

[26] <u>Accord</u> <u>Weller v. Grant County Sheriff</u>, 75 F.Supp.2d 927, 932-935 (N.D. Ind. 1999); <u>Asquith v. Volunteers of America</u>, 1 F.Supp.2d 405 (D. N.J. 1998). <u>Compare</u> <u>Kim v. Hurston</u>, 182 F.3d 113 (2d Cir. 1999) (inmate had protected liberty interest in her continued participation in work release program); <u>with</u> <u>Lee v. Governor of New York</u>, 87 F.3d 55 (2d Cir. 1996) (finding no liberty interest in offender's expectation of future participation in work release program).

[27] The Court in <u>Rogers v. Tennessee</u> held that the Tennessee Supreme Court's decision did not offend this standard and therefore did not violate the Due Process Clause. 532 U.S. at 462-467.

§ 3624(c) is not "unexpected and indefensible by reference to the law which had been

expressed prior to the conduct in issue." Rogers v. Tennessee, 532 U.S. at 462.

CONCLUSION

For the above reasons, the Petition of David Sloane for habeas corpus should be

dismissed.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney


By:    /s/ George B. Henderson, II
       GEORGE B. HENDERSON, II
       Assistant U.S. Attorney
       John Joseph Moakley U. S. Courthouse
       One Courthouse Way, Suite 9200
       Boston, Massachusetts 02210
       (617) 748-3282

Dated: June 3, 2004

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, together with the accompanying
Exhibits 1 through 9 and Declaration of Stephanie Scannell, were served upon Petitioner
David Sloane, Reg. No. 48083-066, FMC Devens Camp, P.O. Box 879, Ayer, MA 01432
by first class, postage prepaid mail on this date.

June 3, 2004                     /s/ George B. Henderson
                                George B. Henderson, II