# EXHIBIT 1

**Petitioner's Sentence Computation:**

Bureau of Prisons Program Statement 5880.28, <u>Sentence Computation Manual CCCA</u>, provides, in pertinent part:

> A prisoner who is serving a term of imprisonment of more than one year, other than a term of imprisonment for the duration of his life . . . shall receive credit toward the service of his sentence, beyond the time served, of fifty-four days at the end of each year of his term of imprisonment, beginning at the end of the first year of the term, unless the Bureau of Prisons determines that, during the year, he has not satisfactorily complied with such institutional disciplinary regulations as have been approved by the Attorney General and issued to the prisoner . . . Credit for the last year or portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence.

<u>See</u> **Document f**, Program Statement 5880.28, <u>Sentence Computation Manual CCCA</u>, page 1-40, attached to the Declaration of Stephanie Scannell. Pursuant to this Program Statement, the following details the amount of Good Conduct Time awarded to Petitioner during his incarceration. <u>See</u> **Document e**.

**Computation Year 03/26/03[1] through 03/25/04**

During this year, Petitioner vested all 54 days of his GCT. <u>Id</u>.

**Computation Year 03/26/04 through 3/11/05**

Assuming Petitioner does not receive any sanctions which disallow GCT, he is expected to vest 51 days GCT. <u>Id</u>. This number is obtained by a calculation which prorates the portion of the year of time served in accordance with Program Statement 5880.28, <u>Sentence Computation Manual, CCCA</u>, and is explained in the next section in further detail. <u>See</u> **Document 1f**, pp. 1-44 to 1-49.

---

[1] March 26, 2003 is obtained by using the date sentence computation began (April 2, 2003) minus seven (7) days to account for jail credit time.

Therefore, Petitioner's total GCT: 54 + 51 = 105 days total GCT.  <u>See</u>
**Document e.**

### Calculation of Amount of GCT Awarded to Petitioner Each Year:

The number of days of GCT awarded to Petitioner each year was calculated
according to Program Statement 5880.28, <u>Sentence Computation Manual CCCA</u>, and is
explained in detail below.  <u>See</u> **Document f.**

#### Assuming Petitioner vested all possible GCT

<u>Start</u>:        06/24/05 (full term expiration date), as of 03/26/03 serving a 822 day
              sentence (2yr, 3mo).

<u>Year One</u>:   Petitioner serves one full year from 03/26/03 to 03/25/04, and is then
              awarded with 54 days GCT.  This changes his release data to the following:

              **5/1/05 (new release date), as of 03/25/04, with 402 days left on sentence.**[2]

<u>Year Two</u> (Hypothetical):   If Petitioner served another full year from 03/26/04 to
                            03/25/05, and was awarded with 54 days GCT, it would
                            change his release date to the following:

              **03/08/05 (new release date), as of 03/25/05.**

Because the last hypothetical calculation is impossible, "if the amount of time
remaining on the sentence is less than a year, a prorated amount of Good Conduct Time
will be entered . . . This also includes shorter sentences up to and including a sentence of
417 days. . .which do not earn the full amount of 54 GCT days, but earn a lesser prorated
amount." <u>See</u> **Document f**, p. 1-61B(f).  Therefore, Petitioner's GCT is prorated after
03/25/04.  This calculation is detailed below, in accordance with Program Statement
5880.28, <u>Sentence Computation Manual CCCA</u>. <u>Id</u>. at pp. 1-44 to 1-49.

---

[2] June 24, 2005 minus 54 days equals May 1, 2005.  Likewise, 822 total days on
sentence minus 366 (leap year) days already served, minus 54 days GCT vested, equals
402 days remaining on sentence.

As of 3/25/04, Petitioner had 402 days left on his sentence.
  402 x .148 = 59 days GCT  (54 / 365 = .148)
  402 - 59 = 343
  343 x .148 = 50.7  (50 days GCT) [3]
Id. at pp. 1-45 to 1-47.

Therefore, the number of GCT days awarded for the prorated term will fall somewhere between 50 and 59 days.  To find the exact number, the following calculation is done until the answer repeats.  The repeating answer is the number of GCT days earned on the prorated term.
  402 - 50 = 352,    352 x .148 = 52.0  (52 days GCT)
  402 - 51 = 351,    351 x .148 = 51.9  (51 days GCT)
  402 - 52 = 350,    357 x .148 = 51.8  (51 days GCT)
  402 - 53 = 349,    349 x .148 = 51.6  (51 days GCT)

Id. at pages 1-45 to 1-48.

Since 51 was the repeating answer, the number of GCT days for the prorated term was calculated to be 51, in accordance with the calculation set forth in Program Statement 5880.28, Sentence Computation Manual CCCA,.  Therefore, after serving one full year, Petitioner's release date was 5/1/05 (new release date), as of 03/25/04, with 401 days left on sentence.  Providing there is no loss of GCT due to disciplinary sanctions, Petitioner's release date is correctly calculated to be 3/11/05 (May 1, 2005 minus 51 days equals March 11, 2005).

---

[3] Because the BOP awards GCT based on days (not award hours or portions of days), all calculations concerning GCT do not take fractions into account, and are rounded down to obtain the nearest full day.

3

# EXHIBIT 2

Westlaw.

53 Fed.Appx. 338                                                                                           Page 1
**(Cite as: 53 Fed.Appx. 338, 2002 WL 31845147 (6th Cir.(Mich.)))**

This case was not selected for publication in the Federal
Reporter.

NOT      RECOMMENDED      FOR      FULL--TEXT
PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations.
Please see Rule 28(g) before citing in a proceeding in a
court in the Sixth Circuit. If cited, a copy must be served on
other parties and the Court.

Please use FIND to look at the applicable circuit court rule
before citing this opinion. Sixth Circuit Rule 28(g). (FIND
CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.

Terrence M. BROWN, Petitioner-Appellant,
v.
John R. HEMINGWAY, Warden; John Ashcroft, U.S.
Attorney, Respondents-
Appellees.

No. 02-1948.

Dec. 16, 2002.

Before MERRITT and DAUGHTREY, Circuit Judges; and
RUSSELL, District Judge. [FN*]

> FN* The Honorable Thomas B. Russell, United
> States District Judge for the Western District of
> Kentucky, sitting by designation.

ORDER

**1 Terrence Brown, a pro se federal prisoner, appeals from
a district court judgment denying Brown's petition for a writ
of habeas corpus. 28 U.S.C. § 2241. Brown also moves for
release pending appeal. The appeal has been referred to a
panel of the court pursuant to Rule 34(j), Rules of the Sixth
Circuit. Upon examination, this panel unanimously agrees
that oral argument is not needed. Fed. R.App. P. 34(a).

Brown challenges the Bureau of Prisons' calculation of his
good time credit. Brown *339 argues that he should receive
a credit of 15% of his 57 month sentence, or 259 days. The
Bureau follows the language of the statute and grants 54
days of credit for each year actually served. See 18 U.S.C. §
3624(b)(1). Therefore, the Bureau will credit Brown with
233 days.

The district court held that the Bureau's interpretation of the
statute was reasonable. The court relied upon a published
Ninth Circuit case and an unpublished Sixth Circuit case.
See Pacheco-Camacho v. Hood, 272 F.3d 1266, 1270-71
(9th Cir.2001), cert. denied, --- U.S. ----, 122 S.Ct. 2313,
152 L.Ed.2d 1067 (2002); Williams v. Lamanna, No.
01-3198, 2001 WL 1136069, at *1, 20 Fed.Appx. 360 (6th
Cir. Sept.19, 2001) (unpub. dec.).

We conclude that the district court properly denied Brown's
petition. Pacheco-Camacho and Williams are persuasive
authority on this point. Brown refers to various Bureau
regulations that utilize the 15% figure. But the language of
the statute uses 54 days as the basis for credit, not the 15%
figure. The Bureau's interpretation is reasonable in light of
the statutory language.

Accordingly, the motion for release pending appeal is
denied, and the district court's judgment is affirmed under
Rule 34(j)(2)(C), Rules of the Sixth Circuit.

53 Fed.Appx. 338, 2002 WL 31845147 (6th Cir.(Mich.))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT 3

Westlaw.

20 Fed.Appx. 360                                                                                 Page 1
**(Cite as: 20 Fed.Appx. 360, 2001 WL 1136069 (6th Cir.(Ohio)))**

**H**
This case was not selected for publication in the Federal
Reporter.

NOT    RECOMMENDED    FOR    FULL--TEXT
PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations.
Please see Rule 28(g) before citing in a proceeding in a
court in the Sixth Circuit. If cited, a copy must be served on
other parties and the Court.

Please use FIND to look at the applicable circuit court rule
before citing this opinion. Sixth Circuit Rule 28(g). (FIND
CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.

Earlus L. WILLIAMS, Petitioner-Appellant,
v.
John LAMANNA, Warden, Respondent-Appellee.

**No. 01-3198.**

Sept. 19, 2001.

Federal prisoner, who was convicted of possession with
intent to distribute cocaine and possession of firearm in
relation to drug-trafficking offense, petitioned for habeas
corpus relief. The District Court dismissed petition. Prisoner
appealed. The Court of Appeals held that prisoner's good
time credit was based on time actually served, not sentence
imposed.

Affirmed.

West Headnotes

**Prisons** 15(4)
310k15(4) Most Cited Cases

Under statute permitting inmate to be awarded 54 days of
good time credit per year, credit was based on time actually
served in prison by inmate, not time that he might
potentially serve, and therefore inmate was not entitled to
credit based on entire 19-year sentence imposed. 18
U.S.C.A. § 3624(b)(1).

**\*360** Before GUY and MOORE, Circuit Judges; HULL,
District Judge. [FN*]

FN* The Honorable Thomas G. Hull, United States

District Judge for the Eastern District of
Tennessee, sitting by designation.

*ORDER*

**\*\*1** Earlus L. Williams, a pro se federal prisoner, appeals a
district court judgment dismissing his petition for a writ of
habeas corpus filed pursuant to 28 U.S.C. § 2241. This case
has been referred to a panel of the court pursuant to Rule
34(j)(1), Rules of the Sixth Circuit. Upon examination, this
panel unanimously agrees that oral argument is not needed.
Fed. R.App. P. 34(a).

In 1991, Williams was convicted of possession with the
intent to distribute cocaine and possession of a firearm in
relation to a drug trafficking offense. He was sentenced to
228 months of imprisonment. Williams challenged the
calculation of his good conduct time under 18 U.S.C. §
3624(b)(1). The district court dismissed the petition as
meritless. In his timely appeal, Williams continues to
challenge the calculation of his good conduct time.

The district court's judgment is reviewed de novo. *See
Charles v. Chandler,* 180 F.3d 753, 755 (6th Cir.1999).

Upon review, we affirm the district court's judgment.
Williams alleged the phrase "may receive credit toward the
service of [his] sentence, beyond the time served" found in §
3624(b) should be interpreted to allow him good time
conduct credits for the entirety of the sentence that was
imposed upon him rather than for the actual time of
incarceration. Williams claims that he is entitled to 1,026
days of good conduct time rather than the 894 days
calculated by the Bureau of Prisons.

**\*361** Under § 3624(b), an inmate may be awarded 54 days
of good time credit per year only "at the end of each year of
the prisoner's term of imprisonment ... subject to
determination by the Bureau of Prisons that, during that
year, the prisoner has displayed exemplary compliance with
the institutional disciplinary regulations." 18 U.S.C. §
3624(b)(1); *see United States v. Martin,* 100 F.3d 46, 47 n. 1
(7th Cir.1996).

The statute clearly states that good conduct time is awarded
on time served by the inmate, not on the time that might
potentially be served by the inmate. The record shows that
for each year that Williams has served, he has received 54
days of good conduct time, thus reducing the amount of
time he will actually serve. Because the number of years
that Williams actually serves will be less than the imposed
nineteen-year sentence, Williams is not entitled to 1,026
days of good conduct time. The Bureau of Prisons correctly

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Westlaw.

20 Fed.Appx. 360                                                         Page 2
**(Cite as: 20 Fed.Appx. 360, 2001 WL 1136069 (6th Cir.(Ohio)))**

calculated Williams's good time conduct as 894 days based
on the number of years he will in fact serve in prison, rather
than on the imposed nineteen-year sentence.

Accordingly, we affirm the district court's judgment. Rule
34(j)(2)(C), Rules of the Sixth Circuit.

20 Fed.Appx. 360, 2001 WL 1136069 (6th Cir.(Ohio))

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

# EXHIBIT 4

ID

RECEIVED UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2003 SEP 29 ⌐ 12: 38

2003 SEP 22 ⌐ 4: 25

DIANA WEBB ATTORNEY'S OFFICE
HARTFORD, CONNECTICUT

 S. DISTRICT COURT
NEW HAVEN, CONN.

v.

PRISONER
CASE NO. 3:03CV961(PCD)(JGM)

KUMA DEBOO and
KATHLEEN HAWK-SAWYER

RULING AND ORDER

The petitioner, Diana Webb ("Webb"), is currently confined
at the Federal Prison Camp in Pekin, Illinois.  She filed this
petition for a writ of habeas corpus, pursuant to 28 U.S.C. §
2241, while she was confined at the Federal Correctional
Institution in Danbury, Connecticut.  For the reasons that
follow, the petition is denied.

Procedural Background

On March 9, 1998, Webb was sentenced in the United States
District Court for the Western District of Missouri to a total
effective sentence of 150 months of imprisonment followed by a
five year term of supervised release.  She was credited for 284
days of time served prior to sentencing.

Webb has been credited with 54 days of good time credit for
each of six years:  5/29/97-5/28/98; 5/29/98-5/28/99; 5/29/99-
5/28/00; 5/29/00-5/28/01; 5/29/01-5/28/02; and 5/28/02-5/28/03.
Bureau of Prison ("BOP") projections, assuming Webb will continue
to receive the maximum of 54 days of good time credit for each

full year yet to be served and a pro-rated 48 days of good time credit for the final year, show her release date as April 19, 2008.[1]

## Discussion

Since the enactment of the Judiciary Act of 1789, the federal court in the district in which a prisoner is incarcerated has been authorized to issue a writ of habeas corpus if the prisoner was in custody under the authority of the United States. See Triestman v. United States, 124 F.3d 361, 373 (2d Cir. 1997). Today, this authority is codified at 28 U.S.C. § 2241(c)(3). In 1948, however, Congress enacted 28 U.S.C. § 2255. This statute "channels collateral attacks by federal prisoners to the sentencing court (rather than to the court in the district of confinement) so that they can be addressed more efficiently." Id.

Currently, "[a] motion pursuant to [section] 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 2001)(citing Chambers v. United States, 106 F.3d 472, 474-75 (2d

---

[1]Webb also is scheduled to receive a one-year sentence reduction for completion of the BOP residential drug and alcohol rehabilitation program. This time is not reflected in the calculations used in this ruling.

2

Cir. 1997) (describing situations where a federal prisoner would properly file a section 2241 petition)).  A section 2255 motion, on the other hand, is considered "the proper vehicle for a federal prisoner's challenge to [the imposition of] his conviction and sentence."  Id. at 146-47.  Thus, as a general rule, federal prisoners challenging the imposition of their sentences must do so by a motion filed pursuant to section 2255 rather than a petition filed pursuant to section 2241.  See Triestman, 124 F.3d at 373.

In her section 2241 petition, Webb challenges the calculation of good time credit, an issue relating to the execution of her sentence.  Thus, the petition properly was filed pursuant to section 2241.

Good time credit is awarded pursuant to 18 U.S.C. §3624(b)(1), which provides:

> [A] prisoner who is serving a term of imprisonment of more than one year . . . may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . . Credit that has not been earned may not later be granted.  Subject to paragraph (2), credit for the last year of portion of a year of the term of imprisonment shall be prorated and credited within the last six weeks of the sentence. . . .

Webb argues that the BOP has incorrectly calculated the

3

maximum amount of good time credit as 588 days, rather than 675
days, the number of days equivalent to fifteen percent of her 150
month sentence.  She appears to contend that the BOP should award
a total amount of good time credit based upon the length of the
sentence imposed and then reduce that total by up to 54 days per
year if she has not complied with the requirements of the statute
during a particular year of her sentence.

The Ninth Circuit has addressed this exact argument.  <u>See</u>
<u>Pacheco-Camacho v. Hood</u>, 272 F.3d 1266 (9th Cir. 2001), <u>cert.</u>
<u>denied</u>, 535 U.S. 1105 (2002).  In that case, the inmate argued
that he should have received the full 54 days credit on his
sentence of one year and one day, rather than the 47 days
resulting from the pro-ration calculation performed by the BOP.
He claimed that the reference to "term of imprisonment" in the
statute required the BOP to base the calculation of good time
credit on the length of the sentence imposed regardless of the
time actually served.  The court rejected this argument.  The
court noted the references in the statute to individual years of
the term of imprisonment and that fact that, for sentences
exceeding one year and one day, the prisoners do not receive any
good time credit until they have complied with prison regulations
for an entire year.  The court concluded that accepting the
prisoner's argument would result in a windfall for a prisoner
during his last year of imprisonment-he would receive a full 54
days good time credit after serving only 311 days.  <u>See id.</u> at

4

1268-69.

This court agrees with the reasoning of the Ninth Circuit. The statute clearly states that an inmate may receive up to 54 days of good time credit after each year of the term of imprisonment. The reference to this annual determination, required that the award be made each year. The records provided by the respondent reveal that Webb has been credited with the full 54 days for each year of her sentence completed thus far. The projections assume that Webb will continue to receive the full amount each year.

In her argument, Webb fails to acknowledge that with each annual award of good time credit, her release date is adjusted. The statute requires that the credit be applied to the portion of the sentence yet to be served. See 18 U.S.C. § 3624(b)(1) ("credit toward the service of the prisoner's sentence, beyond the time served"). To date, she has been awarded 324 days, or nearly eleven months, of good time credit. That time is subtracted from Webb's release date. Because she will not be incarcerated for that eleven months, she will not be eligible to earn good time credit for that period. She cannot receive good time credit for time she did not serve. See Williams v. Lamanna, 2001 WL 1136069 (6th Cir. Sept. 19, 2001) (Section 3624(b)(1) "clearly states that good conduct time is awarded on time served by the inmate, and not on the time that might potentially be served by the inmate"). The court concludes that the BOP's

5

method of calculation of good time credit is consistent with and a reasonable interpretation of the statute.

<u>Conclusion</u>

The petition for writ of habeas corpus [doc. #1] is **DENIED**.

The court determines that no question of substance is presented for appellate review. Thus a certificate of appealability is denied.

**SO ORDERED**.

Dated at New Haven, Connecticut this _18th_ day of September, 2003.

_____
Peter C. Dorsey
United States District Judge

6

# EXHIBIT 5

**NOT FOR PUBLICATION**



RECEIVED
MAY 2 0 2003
U.S. ATTORNEY'S OFFICE
CAMDEN, NEW JERSEY 08102

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

GERALD DE GEROLAMO,              :

                                 Civil Action No. 03-139 (FLW)

                Petitioner,      :

        v.                       :       **OPINION**

K.M. WHITE, WARDEN,              :

                Respondent.      :

FILED

MAY 2 0 2003

AT 8:30 _____ L;
WILLIAM T. WALSH

**APPEARANCES:**

    Gerald DeGerolamo, Petitioner pro se
    F.C.I. Fairton
    #80457-054
    P.O. Box 420
    Fairton, NJ  08320

    Louis J. Bizzarri, Assistant United States Attorney
    Camden Federal Building
    401 Market Street
    P.O. Box 1427
    Camden, NJ  08101
        Attorney for Respondent

**WOLFSON**, District Judge

    Petitioner Gerald DeGerolamo ("DeGerolamo"), a prisoner

currently confined at the Federal Correctional Institution at

Fairton, New Jersey, has submitted a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2241.[1]  The sole respondent
is Warden K.M. White.

        For the reasons stated herein, the Petition must be denied.

                        I.  BACKGROUND

        Petitioner DeGerolamo is currently serving an aggregate 160-
month (13 years, 4 months) sentence imposed by the United States
District Court for the Southern District of New York in three
separate convictions on April 9, 1991, and June 23, 1994.[2]
(Petition ¶ 4.1; Answer at 2, 4-5.)  The Bureau of Prisons
("BOP") has calculated Petitioner's sentence, according to 18
U.S.C. § 3624(b)(1) and BOP Program Statement 5880.28, to reflect
a potential maximum award of 603 days of good time credit,[3] and

----

        [1] Section 2241 provides in relevant part:
        (a) Writs of habeas corpus may be granted by the
        Supreme Court, any justice thereof, the district courts
        and any circuit judge within their respective
        jurisdictions.
        (c) The writ of habeas corpus shall not extend to a
        prisoner unless-- ... (3) He is in custody in violation
        of the Constitution or laws or treaties of the United
        States ... .

        [2] Petitioner was on escape status from March 7, 1992 through
April 3, 1993.  (Answer at 4.)

        [3] Petitioner has been awarded 54 days of good time credit
for each full year served on his sentence, beginning January 28,
1991, (the date Petitioner was taken into custody in presentence
status), with the exception of the year ended February 24, 1994,
(during which he was on escape status), for which year he was
awarded 27 days credit, a total of 567 days.  It is projected
that if no good time credit is disallowed or forfeited between
February 24, 2003, and the end of his sentence, Petitioner will
be awarded an additional 36 days of good time credit.  (Answer at
6-9.)

                            2

has projected a release date of October 31, 2003, if all such
good time credits are awarded.  (Pet. ¶ 4.5; Answer at 3.)

Petitioner contends that the BOP's interpretation of
§ 3624(b)(1) is contrary to the unambiguous intent of Congress
and is depriving him of good time credits that should be awarded
under the statute.  (Pet. ¶¶ 5.1 - 5.5.)  Petitioner contends
that the BOP erroneously calculates the good time credits based
upon time served, rather than upon the sentence as imposed.
(Pet. ¶ 4.4.)  He contends that he is entitled to earn a maximum
of 718 days good time credit (54 days per year times 13 and 1/3
years),[4] based upon the sentence imposed.  He asks this Court to
order the Bureau of Prisons to recalculate his good time credits
according to what he asserts is the correct interpretation of the
statute.

## II.  ANALYSIS

As of the time of Petitioner's imprisonment, 18 U.S.C.
§ 3624(b) provided:

> A prisoner who is serving a term of imprisonment of
> more than one year, other than a term of imprisonment
> for the duration of his life, shall receive credit
> toward the service of his sentence, beyond the time
> served, of fifty-four days at the end of each year of
> his term of imprisonment, beginning at the end of the
> first year of the term, unless the Bureau of Prisons
> determines that, during that year, he has not
> satisfactorily complied with such institutional
> disciplinary regulations as have been approved by the

---

[4] Fifty-four days/year times 13 years 4 months actually
yields 720 days.

3

Attorney General and issued to the prisoner. If the
Bureau determines that, during that year, the prisoner
has not satisfactorily complied with such institutional
regulations, he shall receive no such credit toward
service of his sentence or shall receive such lesser
credit as the Bureau determines to be appropriate. The
Bureau's determination shall be made within fifteen
days after the end of each year of the sentence. Such
credit toward service of sentence vests at the time
that it is received. Credit that has vested may not
later be withdrawn, and credit that has not been earned
may not later be granted. Credit for the last year or
portion of a year of the term of imprisonment shall be
prorated and credited within the last six weeks of the
sentence.

18 U.S.C. § 3624(b).[5]

The Bureau of Prisons has codified its interpretation of

§ 3624(b) at 28 C.F.R. § 523.20.

Pursuant to 18 U.S.C. 3624(b), as in effect for
offenses committed on or after November 1, 1987 but
before April 26, 1996, an inmate earns 54 days credit
toward service of sentence (good conduct time credit)
for each year served. This amount is prorated when the
time served by the inmate for the sentence during the
year is less than a full year. The amount to be
awarded is also subject to disciplinary allowance . . . .
. . .

This interpretation is implemented through BOP Program Statement

("P.S.") 5880.28. (Answer, Decl. of Joyce Horikawa, Ex. E.)  The

Bureau of Prisons has determined that "54 days of GCT [("good

conduct time")] may be earned for each full year served on a

_____

[5] Section 3624(b) has since been amended to provide that
credits awarded after the date of enactment (April 26, 1996) of
the Prison Litigation Reform Act (Title VII of Pub. L. 104-134)
shall vest on the date the prisoner is released from custody," 18
U.S.C. § 3624(b)(2), and that "Credit that has not been earned
may not later be granted," 18 U.S.C. § 3624(b)(1).

4

sentence in excess of one year," P.S. 5880.28(g), and has derived
a formula to calculate the amount of GCT that may be earned for
any fractional year served on a sentence in excess of one year.

> For release purposes, subsection 3624(b) is the
> most important provision in the computation process
> since the proper application of that subsection
> determines the actual statutory date of release for the
> prisoner. The release date is determined, of course,
> by subtracting the total amount of GCT awarded during
> the term of the sentence from the full time date of the
> sentence. The <u>total</u> amount of GCT awarded during the
> term of a sentence is found by adding the amount of GCT
> awarded at the end of each year to the amount of GCT
> awarded for the last portion of a year.

> As noted in (1) above, 54 days of GCT may be
> awarded for each full year served on a sentence in
> excess of one year. Since 54 days of GCT per year
> cannot be divided evenly into one year, or 12 months,
> or 52 weeks, or 365 days, determining the amount of GCT
> that may be awarded for the last portion of a year on
> the sentence becomes arithmetically complicated. The
> BOP has developed a formula (hereinafter called the
> "GCT formula") that best conforms to the statute when
> calculating the maximum number of days that may be
> awarded for the time served during the last portion of
> a year on the sentence.

> The GCT formula is based on dividing 54 days (the
> maximum number of days that can be awarded for one year
> in service of a sentence) into one day which results in
> the portion of one day of GCT that may be awarded for
> one day served on a sentence. 365 days divided into 54
> days equals .<u>148</u>. Since .148 is less than one full
> day, no GCT can be awarded for one day served on the
> sentence. Two days of service on a sentence equals
> .296 (2 x .148) or zero days GCT; ... seven days equals
> 1.036 (7 x .148) or <u>1</u> day GCT. The fraction is always
> dropped.

> . . .

> It is essential to learn that GCT <u>is not</u> awarded
> on the basis of the length of the sentence imposed, but
> rather on the number of days actually served. In other

5

words, when the GCT awarded plus the number of days
actually served equals the days remaining on the
sentence, then the prisoner shall be released on the
date arrived at in the computation process. (days
remaining on sentence - (GCT + days served) = release
date). ...

P.S. 5880.28(g), Sentence Computation Manual CCCA, at 1-40

through 1-45 (Answer, Decl. of Joyce Horikawa, Ex. E.).

A.    Exhaustion of Administrative Remedies

     Respondent asks this Court to dismiss the Petition because

Petitioner has failed to exhaust his administrative remedies.[6]

(Answer at 10-12.)  Petitioner does not deny his failure to

exhaust administrative remedies, but contends that such

exhaustion is not a jurisdictional bar and would be futile, in

that he challenges the validity of the Bureau of Prisons'

interpretation of § 3624.   (Traverse.)

_____

     [6] The BOP Administrative Remedy Program is a three-tier
process that is available to inmates confined in institutions
operated by the BOP for "review of an issue which relates to any
aspect of their confinement." 28 C.F.R. § 542.10.  An inmate
must initially attempt to informally resolve the issue with
institutional staff.  28 C.F.R. § 542.13(a).  If informal
resolution fails or is waived, an inmate may submit a BP-9
Request to "the institution staff member designated to receive
such Requests (ordinarily a correctional counsel)" within 20 days
of the date on which the basis for the Request occurred, or
within any extension permitted.  28 C.F.R. § 542.14.  An inmate
who is dissatisfied with the Warden's response to his BP-9
Request may submit a BP-10 Appeal to the Regional Director of the
BOP within 20 days of the date the Warden signed the response.
28 C.F.R. § 542.15(a).  The inmate may appeal to the BOP's
General Counsel on a BP-11 form within 30 days of the day the
Regional Director signed the response.  Id.  Appeal to the
General Counsel is the final administrative appeal.  Id.

Although 28 U.S.C. § 2241 contains no statutory exhaustion
requirement, a federal prisoner ordinarily may not bring a
petition for writ of habeas corpus under 28 U.S.C. § 2241,
challenging the execution of his sentence, until he has exhausted
all available administrative remedies.  See, e.g., Callwood v.
Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States
Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v.
Alldredge, 481 F.2d 303, 306 (3d Cir. 1973).  The exhaustion
doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a
> factual record and apply its expertise facilitates
> judicial review; (2) permitting agencies to grant the
> relief requested conserves judicial resources; and (3)
> providing agencies the opportunity to correct their own
> errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd,
248 F.3d 1130 (3d Cir. 2000).  See also Moscato v. Federal Bureau
of Prisons, 98 F.3d 757, 761 (3d Cir. 1996).  Nevertheless,
exhaustion of administrative remedies is not required where
exhaustion would not promote these goals.  See, e.g., Gambino v.
Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required
where petitioner demonstrates futility); Lyons v. U.S. Marshals,
840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where
it "would be futile, if the actions of the agency clearly and
unambiguously violate statutory or constitutional rights, or if
the administrative procedure is clearly shown to be inadequate to
prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959,

7

*2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

Here, there is no need to develop a factual record, nor does this matter require application of the agency's particular expertise.  Petitioner does not challenge the application of the agency's regulations to him, but challenges whether the regulation and Program Statement accurately implement the statute pursuant to which they were promulgated.  This is a question within the expertise of courts.  See Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").  Accordingly, the purposes of the exhaustion requirement would not be served by requiring the Petitioner to exhaust his administrative remedies, and this Court will proceed to determine Petitioner's claim on the merits.

B.     The Good Conduct Time Credits

Respondent contends that § 3624 is unambiguous, and the Bureau of Prisons has correctly interpreted the statute and, to the extent the statute can be construed as silent or ambiguous as to the basis for GCT, the Bureau of Prisons' interpretation is reasonable and entitled to deference under the rule of Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S.

8

837, 842-43 (1984).  (Answer at 18-24.)  This Court agrees with

Respondent.

> When a court reviews an agency's construction of the
> statute which it administers, it is confronted with two
> questions.  First, always, is the question whether
> Congress has directly spoken to the precise question at
> issue.  If the intent of Congress is clear, that is the
> end of the matter; for the courts, as well as the
> agency, must give effect to the unambiguously expressed
> intent of Congress.  If, however, the court determines
> Congress has not directly addressed the precise
> question at issue, the court does not simply impose its
> own construction on the statute, as would be necessary
> in the absence of an administrative interpretation.
> Rather, if the statute is silent or ambiguous with
> respect to the specific issue, the question for the
> court is whether the agency's answer is based on a
> permissible construction of the statute.

Chevron, 467 U.S. at 842-43 (footnotes omitted).

Two Circuit Courts of Appeals have addressed the statutory-

construction issue presented here by Petitioner.  In Williams v.

LaManna, 20 Fed.Appx. 360, 361, 2001 WL 1136069 (6th Cir. Sept.

19, 2001) (unpubl.), the Court of Appeals for the Sixth Circuit

held that "[t]he statute clearly states that good conduct time is

awarded on time served by the inmate, not on the time that might

potentially be served by the inmate."

The Court of Appeals for the Ninth Circuit did not find the

language so clear.  "In this case, the words of the statute do

not provide clear guidance as to what the phrase 'term of

imprisonment' means."  Pacheco-Camacho v. Hood, 272 F.3d 1266,

1268 (9th Cir. 2001) (involving a claim by a prisoner sentenced

to a term of imprisonment of one year and one day), cert. denied,

9

535 U.S. 1105 (2002). The Court further held that the
legislative history did nothing to remove that ambiguity. Id. at
1269. Proceeding to the second step of the Chevron analysis, the
Court found that the language granting the BOP authority to award
or withhold good time credits and providing for proration of the
credit for the last year or portion of a year implicitly charged
the Bureau of Prisons with implementation of the proration
scheme. Id. at 1270. The Court held that the agency's
interpretation of the statute and proration formula were
reasonable, and entitled to deference, in that they prevent
prisoners from receiving a windfall, in the form of full credit
for time they do not serve, and they enable prisoners to estimate
with certainty the time of their release. Id. at 1268-71.

Finally, the court rejected the prisoner's suggestion that
his interpretation of the statute should be preferred because of
the rule of lenity, which "ensures that the penal laws will be
sufficiently clear, so that individuals do not accidentally run
afoul of them and courts do not impose prohibitions greater than
the legislature intended." Id. at 1271 (citing United States v.
Bass, 404 U.S. 336, 347-48 (1971)). The court noted that the
rule of lenity does not prevent an agency from resolving
statutory ambiguity through regulation, id. (citing Babbitt v.
Sweet Home Chapter of Communities for a Great Oregon, 515 U.S.
687, 705 n.18 (1995)), and held that the BOP's regulation "gives

10

the public sufficient warning to ensure that nobody mistakes the
ambit of the law or its penalties," id. at 1272.

    This Court is of the opinion that the language of the
statute is not ambiguous and that the BOP regulation and Program
Statement correctly interpret and implement the statute.  The
statute specifically contemplates the award of GCT credit
incrementally, in the amount of a maximum of 54 days at the end
of each year of the term, and in an amount proportionately less
than 54 days for any fractional portion of a year left at the end
of the term, taking into account the reductions that have been
made incrementally at annual intervals.  This is the scheme
employed by the Bureau of Prisons and applied here to Petitioner.
To the extent the language of the statute could be deemed
ambiguous, this Court adopts the reasoning of the Court of
Appeals for the Ninth Circuit in Pacheco-Camacho.

                    III.   CONCLUSION

    For the reasons set forth above, the Petition must be
denied.  An appropriate order follows.

                                Freda L. Wolfson
                                United States District Judge

Dated: May 20, 2003

                              11

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GERALD DE GEROLAMO,          :

    Petitioner,          :          Civil Action No. 03-139 (FLW)

    v.          :          **ORDER**

K.M. WHITE, WARDEN,          :

    Respondent.          :

For the reasons set forth in the Opinion filed herewith,

IT IS on this _20th_ day of _May_, 2003,

ORDERED that the Petition is DENIED.

MAY 2 0 2003

Freda L. Wolfson
United States District Judge

**ENTERED**
ON
THE DOCKET

MAY 2 0 2003

WILLIAM T. WALSH, CLERK

By _____ (Deputy Clerk)

# EXHIBIT 6



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

DIRECTIVE AFFECTED: 7310.04
CHANGE NOTICE NUMBER: 7310.04
DATE: 12/16/98

1.  <u>PURPOSE AND SCOPE</u>.  To reissue the Program Statement on **Community Corrections Center (CCC) Utilization and Transfer Procedures**.

2.  <u>SUMMARY OF CHANGES</u>.  This reissuance incorporates text consistent with the recently issued Program Statement on Categorization of Offenses.  In addition, text and procedural improvements recommended by field and Regional Office staff have also been incorporated.  These changes are summarized below:

*   Incorporates recommendations made by the Mothers and Infants Together (MINT) workgroup;
*   Allows inmates who are otherwise eligible for camp placement to be transferred to a camp prior to transfer to a CCC; and,
*   Eliminates the possibility of "stacking" time in a halfway house by combining Bureau referral placement with public law or supervised release placement.

3.  <u>ACTION</u>.  File this Change Notice in front of the Program Statement on **Community Corrections Center (CCC) Utilization and Transfer Procedure**.

/s/
Kathleen Hawk Sawyer
Director



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

| | |
|---|---|
| **OPI:** | CPD |
| **NUMBER:** | 7310.04 |
| **DATE:** | 12/16/98 |
| **SUBJECT:** | Community Corrections Center (CCC) Utilization and Transfer Procedure |

1. <u>PURPOSE AND SCOPE</u>.  To provide guidelines to staff regarding the effective use of Community Corrections Centers (CCCs).  This Program Statement defines placement criteria for offenders, requires that staff members start the placement process in a timely manner, and defines the circumstances when inmates may refuse Community Corrections (CC) programs.  It also establishes an operational philosophy for CCC referrals that, whenever possible, eligible inmates are to be released to the community through a CCC unless there is some impediment as outlined herein.

CCCs provide an excellent transitional environment for inmates nearing the end of their sentences.  The level of structure and supervision assures accountability and program opportunities in employment counseling and placement, substance abuse, and daily life skills.

One reason for referring an inmate to a CCC is to increase public protection by aiding the transition of the offender into the community.  Participating in community-based transitional services may reduce the likelihood of an inmate with limited resources from recidivating, whereas an inmate who is released directly from the institution to the community may return to a criminal lifestyle.  While clearly dangerous inmates should be separated from the community until completing their sentences, other eligible inmates should generally be referred to CCCs to maximize the chances of successful reintegration into society.

Finally, the scope of this Program Statement has been extended to include CCC consideration/placement of District of Columbia Department of Corrections inmates.

2.  <u>PROGRAM OBJECTIVES</u>.  The expected results of this program are:

   a.  All eligible inmates will have opportunities to participate in CCC programs to assist with their reintegration into the community, in accordance with their release needs.

   b.  All inmates will have opportunities to communicate directly with staff who make significant CCC referral recommendations.

   c.  Referral packets for CCC placement will be timely and complete.

   d.  Before any inmate is transferred to a CCC, the CCC staff will have the required notice and other documentation.

   e.  The public will be protected from undue risk.

3.  <u>DIRECTIVES AFFECTED</u>

   a.  <u>Directive Rescinded</u>

      PS 7310.03    Community Corrections Center (CCC)
                    Utilization and Transfer Procedures (3/25/96)

   b.  <u>Directives Referenced</u>

      PS 1434.06    Jurisdiction on Escape Related Issues -
                    Memorandum of Understanding USMS/FBI/BOP
                    (7/25/94)
      PS 1490.04    Victim and Witness Notification (2/3/98)
      PS 5100.06    Security Designation and Custody
                    Classification Manual (6/7/96)
      PS 5110.12    Notifications of Release to State and Local
                    Law Enforcement Officials (1/21/98)
      PS 5180.04    Central Inmate Monitoring System (8/16/96)
      PS 5250.01    Public Works and Community Service Projects
                    (1/19/93)
      PS 5264.06    Telephone Regulations for Inmates (12/22/95)
      PS 5280.08    Furloughs (2/4/98)
      PS 5322.10    Classification and Program Review of Inmates
                    (9/4/96)
      PS 5325.05    Release Preparation Program, Institution
                    (7/18/96)
      PS 5330.10    Drug Abuse Programs Manual, Inmate (5/25/95)
      PS 5380.05    Financial Responsibility Program, Inmate
                    (12/22/95)

PS 5550.05    Escape from Extended Limits of Confinement
              (3/27/96)
PS 5553.05    Escapes/Deaths Notification (9/17/97)
PS 5800.07    Inmate Systems Management Manual (12/24/91)
PS 5800.11    Central File, Privacy Folder, and Parole Mini
              File (9/7/97)
PS 5873.05    Release Gratuities, Transportation, and
              Clothing (9/4/96)
PS 5882.03    Fines and Costs (2/4/98)
PS 6000.05    Health Services Manual (9/15/96)
PS 6070.05    Birth Control, Pregnancy, Child Placement,
              and Abortion (8/9/96)
PS 7300.09    Community Corrections Manual (1/12/98)
PS 7320.01    Home Confinement (9/6/95)
PS 7331.03    Pretrial Inmates (11/22/94)
PS 7430.01    Community Transitional Drug Treatment
              Services, Inmate (1/20/95)

18 U.S.C. § 3621(b)
18 U.S.C. § 3624(c)

4.  STANDARDS REFERENCED

   a.  American Correctional Association 3rd Edition Standards for
Adult Correctional Institutions:  3-4265, 3-4343, 3-4343-1,
3-4387, 3-4388, 3-4388-2, 3-4389, 3-4391, 3-4393, 3-4393-1

   b.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities:  3-ALDF-3E-04, 3-ALDF-4E-19,
3-ALDF-4E-19-1, 3-ALDF-4F-04, 3-ALDF-4F-05, 3-ALDF-4F-07,
3-ALDF-4G-01, 3-ALDF-4G-06, 3-ALDF-4G-07

   c.  American Correctional Association 2nd Edition Standards for
Administration of Correctional Agencies:  2-CO-4G-01, 2-CO-4G-02

   d.  American Correctional Association Standards for Adult
Correctional Boot Camp Programs:  1-ABC-3D-04, 1-ABC-4E-20,
1-ABC-4F-08, 1-ABC-4F-10, 1-ABC-4G-01, 1-ABC-4G-02, 1-ABC-4G-03,
1-ABC-4G-06

5.  STATUTORY AUTHORITY.  18 U.S.C. § 3624(c), provides:

   "The Bureau of Prisons shall, to the extent practicable,
   assure that a prisoner serving a term of imprisonment spends
   a reasonable part, not to exceed six months, of the last ten
   per centum of the term to be served under conditions that
   will afford the prisoner a reasonable opportunity to adjust

to and prepare for the prisoner's reentry into the
community.  The authority provided by this subsection may be
used to place a prisoner in home confinement.  The United
States Probation Office shall, to the extent practicable,
offer assistance to a prisoner during such pre-release
custody."

18 U.S.C. § 3621(b) provides:

"The Bureau of Prisons shall designate the place of the
prisoner's imprisonment.  The Bureau may designate any
available penal or correctional facility . . . the Bureau
determines to be appropriate and suitable."  A CCC meets the
definition of a "penal or correctional facility."

Therefore, the Bureau is not restricted by § 3624(c) in
designating a CCC for an inmate and may place an inmate in a CCC
for more than the "last ten per centum of the term," or more than
six months, if appropriate.

Section 3624(c), however, does restrict the Bureau in placing
inmates on home confinement to the last six months or 10% of the
sentence, whichever is less.

6.  PRETRIAL/HOLDOVER AND/OR DETAINEE INMATES.  This Program
Statement does not apply to pretrial, holdover, or detainee
inmates.

7.  COMMUNITY-BASED PROGRAMS

   a.  Community Corrections Centers (CCC).  CCCs, commonly
referred to as "halfway houses," provide suitable residence,
structured programs, job placement, and counseling, while the
inmates' activities are closely monitored.  All CCCs offer drug
testing and counseling for alcohol and drug-related problems.
During their stay, inmates are required to pay a subsistence
charge to help defray the cost of their confinement; this charge
is 25% of their gross income, not to exceed the average daily
cost of their CCC placements.  Failure to make subsistence
payments may result in disciplinary action.

   These contract facilities, located throughout the United
States, provide two program components:  the Community
Corrections Component and the Prerelease Component:

      (1)  The Community Corrections Component is designed as the
most restrictive option.  Except for employment and other
structured program activities, an inmate in this component is

restricted to the CCC.  An inmate shall ordinarily be placed in
the Community Corrections Component upon arrival at the CCC.

This orientation period normally lasts for two weeks or
until the inmate has demonstrated to CCC staff the responsibility
necessary to function in the community.  Based on their
professional judgment, CCC staff shall determine when an inmate
is prepared to advance to the Prerelease Component.

(2)   The Prerelease Component is designed to assist inmates
making the transition from an institution setting to the
community.  These inmates have more access to the community and
family members through weekend and evening passes.

b.   Community Corrections Programs.  In addition to a CCC's
traditional services, the Bureau also has the following
community-based programs.  Referral procedures may be described
in independent Bureau directives issuances.  The Community
Corrections Manager (CCM) reviews the inmate's characteristics
and the recommendations noted in the referral package to
determine if one of the following programs (if available) may be
more appropriate than traditional CCC placement.

(1)   Comprehensive Sanctions Center (CSC).  The CSC concept,
initiated by the Bureau, with the extensive cooperation and
teamwork of U.S. Probation and CCC contractors, was developed to
provide courts with a wider range of sentencing options and to
facilitate the development and implementation of community
program plans tailored to the individual needs of prerelease
inmates.

The CSC is designed to meet the needs of higher risk
prerelease inmates and consists of six different levels of
supervision, ranging from 24-hour confinement to Home
Confinement.

It also may have an intensive treatment component consisting
of substance abuse education and treatment, life skills training,
mental health counseling, education, employment assistance, and
mentoring.  The inmate's progress is systematically reviewed by a
Program Review Team (PRT), consisting of representatives from the
Bureau, U.S. Probation, and the CCC.

(2)   Mothers and Infants Together (MINT).  MINT is an
alternative residential program that promotes bonding and
parenting skills for low risk female inmates who are pregnant.
The inmate is placed in the program two months prior to delivery
and remains there for three months after delivery.