(3)  <u>Home Confinement</u>.  Home Confinement is a generic term used to cover all circumstances in which an inmate is required to remain at home during non-working hours of the day.  Electronic monitoring equipment is sometimes used to monitor compliance with the program's conditions.  These programs provide an opportunity for inmates to assume increasing levels of responsibility, while, at the same time, providing sufficient restrictions to promote community safety and convey the sanctioning value of the sentence.

Home Confinement provides an option for inmates who do not need the structure of a residential facility.  Except for inmates who are initially sentenced to and graduate from the Intensive Confinement Center Program, statutory provisions limit the length of Home Confinement to the last 10% of the sentence, or six months, whichever is less.  Inmates are required to pay subsistence of 25% of their gross income to defray the costs of Home Confinement and electronic monitoring.

The Bureau is involved in two Home Confinement programs: Home Confinement operates from the Bureau's own network of CCCs and the U.S. Probation Division program.

(a)  <u>CCC Contractors</u>.  The first form of Home Confinement is CCC contractor-operated programs.  In these programs, CCC staff monitor the inmate.  Currently, only a few of these programs use electronic monitoring equipment.  Supervision is provided by daily telephone contacts and periodic personal contacts in the home and workplace.

(b)  <u>U.S. Probation Office</u>.  The second form of Home Confinement involves placing federal inmates in programs operated by the U.S. Probation Office.  These programs use electronic monitoring equipment with U.S. Probation Officers (USPO) providing supervision.

(4)  <u>Transitional Services Program (TSP)</u>.  The community-based transition phase of the Bureau's Residential Drug Treatment Program is designed to complement the accomplishments and continue the institutional program's treatment plan.  It reinforces the inmate's personal responsibility to lead a drug-free lifestyle through personal accountability for choices, confrontation of negative thinking patterns, and instruction in basic social skills.  Inmates who successfully complete the Residential Drug Treatment Program's institutional phase should normally be considered for the maximum 180 day period of CCC placement, if they are otherwise eligible.

(5)    <u>Intensive Confinement Center (ICC)</u>.  A lengthy period of Community Corrections Center confinement follows the completion of the ICC program's institutional phase.  The CCC time is divided among the restrictive Community Corrections Component, the Prerelease Component, and Home Confinement. Specific referral procedures are outlined in the ICC Program Statement.

8.  <u>RELEASE PLAN</u>.  Staff shall begin release planning at an inmate's first team meeting, normally the initial classification, and shall continue throughout the inmate's confinement.  The following guidelines apply:

    a.  Planning early in an inmate's period of confinement is necessary to ensure release preparation needs are identified and appropriate release preparation programs are recommended.

    b.  Preliminary decisions regarding eligibility for CC Programs are to be made well in advance of the last year of confinement.

    c.  A final and specific release preparation plan, including a decision as to CCC referral, is normally established at a team meeting no later than 11 to 13 months before an inmate's projected release date.

9.  <u>CCC CRITERIA AND REFERRAL GUIDELINES</u>

    a.  <u>Regular Referrals</u>.  Staff shall make recommendations for CCC placements based on assessments of inmate needs for services, public safety, and the necessity of the Bureau to manage its inmate population responsibly.  CCCs are a program element and are not to be used as a reward for good institutional behavior, although an inmate's institutional adjustment may be a factor in making a referral determination.

    A number of factors must be weighed to determine the length of CCC placement for inmates, including their individual needs and existing community resources.  Ordinarily, inmates with shorter sentences do not require maximum CCC placement due to reduced transition needs.  Additionally, inmates who are required to spend a portion of time in a CCC as a condition of release (i.e. supervised release or court order) do not require an extended Bureau CCC placement.  For example, if the Unit Team determines the inmate needs a six month CCC placement, but the inmate is required to stay in a CCC for 90 days as a condition of release, then the institution shall ordinarily refer the inmate for a 60-90 day CCC placement.

**Referrals to CCM offices should include a recommendation regarding the length of stay (range), such as recommending 60 to 90 days or 90 to 120 days, etc. This range of at least 30 days allows the CCM to match population needs with budgetary and CCC bed space resources, a process which requires this flexibility.**

However, there will be cases when the institution, for various management reasons, wants the CCM to place the inmate not earlier than a specific date. Then, the CCC referral form should specify a recommended placement date rather than a range and further state that the CCM should not adjust that date. The CCM shall adhere to the recommended date, with any adjustment only being downward if budget and/or bed space constraints are a factor.

The following CCC referral guidelines apply:

(1) An inmate may be referred up to 180 days, with placement beyond 180 days highly unusual, and only possible with extraordinary justification. In such circumstances, the Warden shall contact the Regional Director for approval and the Chief USPO in the inmate's sentencing district to determine whether the sentencing judge objects to such placement.

(2) The ultimate goal is to maximize each eligible inmate's chances for successful release and a law-abiding life.

(3) When an inmate has a history of escape or failure in one or more CC Programs, careful review and consideration should be given regarding the suitability of participation and the length of placement.

(4) Inmates with minor medical conditions or disabilities may also be considered for community placement. Inmates are required to assume financial responsibility for their health care while assigned to community programs. Such inmates must provide sufficient evidence to institution staff of their ability to pay for health care while at a CCC prior to the referral being made. When an inmate is unable or unwilling to bear the cost of necessary health care, the inmate shall be denied placement.

(5) Inmates who have been approved for CCC referral and are otherwise appropriate for camp placement shall be transferred to a camp for intermediate placement. The inmate should have completed the Institution Release Preparation Program at the parent institution. The parent institution shall complete the CCC referral packet and the camp should be closer to the inmate's release residence. This process should be completed to allow the

inmate a minimum of a 60 day placement at the camp prior to the acceptance date at the CCC.

b.  <u>MINT Referrals</u>.  Female inmates are eligible to enter the program at the CCC generally during their last two months of pregnancy.  After birth, the mother is allowed three additional months to bond with the child.  The mother shall then be returned to an institution to complete her sentence.  If she is eligible for prerelease services, she may remain at that facility only if she is going to be supervised in that judicial district.

The CEO may approve early or extended placements with a recommendation by the treating obstetrician and Clinical Director's concurrence.  A placement extending beyond 180 days requires the Regional Director's approval.  Direct court commitments shall have a secondary designation noted on the Inmate Load and Security/Designation form (BP-337).  This shall be used to determine the institution responsible for the inmate's medical expenses while she is confined in the MINT Program.

Authority to pay immediate post-natal care of the child born to an inmate while in custody is derived from administrative discretion when the Bureau finds itself responsible for the cost by default (no other resources can be compelled to pay).  It is reasonable that the Bureau provides for the child's medical expenses for the first three days after routine vaginal birth or up to seven days for a Cesarean section.

Prior to the birth, the mother must make arrangements for a custodian to take care of the child.  At this time, the CEO shall ensure the person or agency taking custody of the child is also asked to be responsibile for medical care costs beyond three days after birth.  (<u>Note</u>:  This may be extended by the Regional Director for an additional seven days for extenuating circumstances on a case-by-case basis.)  The person(s) receiving custody of the child should sign a Statement of Responsibility for medical care costs, clearly indicating that the signing party accepts financial responsibility.  Unit Management staff are responsible for obtaining this statement, and forwarding copies to the Health Services Administrator (HSA) for placement in the HSA's outside hospitalization file and to the Controller (see the Sample Statement of Responsibility (Attachment D)).

Health Services staff shall confirm an inmate's pregnancy and evaluate her medical condition.  Health Services staff shall indicate whether CCC placement is medically appropriate and document this on the Medical Evaluation for Transfer of Inmates to CCC Type Facility (BP-351) which shall be forwarded to the Unit Team.

When the Unit Team has concerns regarding the appropriateness of a CCC placement (such as criminal history, severity of current offense), procedures will be followed according to Section 10.i.(2), Limitations on Eligibility for All CCC Referrals.

The following CCC referral guidelines apply in addition to the guidelines provided for regular referrals:

(1)    The inmate must be pregnant upon commitment with an expected delivery date prior to release.

(2)    The inmate or guardian must assume financial responsibility for the child's care, medical and support, while residing at the CCC.  Should the inmate or the guardian be unable or unwilling to bear the child's financial cost, the inmate may be transferred back to her parent institution.

(3)    An inmate who becomes pregnant while on furlough, or has more than five years remaining to serve on her sentence(s), or plans to place her baby up for adoption shall not be referred for MINT placement.

**Referrals to CCMs should state a specific date of placement. This date should be approximately two months prior to the inmate's expected delivery date.**

The CCC's Terminal Report should fully describe the inmate's experience in, and reaction to, the MINT Program.  It should also summarize counseling received in the program and include follow-up medical or program recommendations for the institution to facilitate the inmate's transition.

Inmates in need of foster care placement assistance shall be referred to the institution social worker, or if the institution does not have a social worker, staff shall contact a social worker in the community for foster care placement assistance.

10.    <u>LIMITATIONS ON ELIGIBILITY FOR ALL CCC REFERRALS</u>.  Inmates in the following categories shall not ordinarily participate in CCC programs:

a.    Inmates who are assigned a "Sex Offender" Public Safety Factor.

b.    Inmates who are assigned a "Deportable Alien" Public Safety Factor.

c.    Inmates who require inpatient medical, psychological, or

PS 7310.04
12/16/98
Page 11

psychiatric treatment.

d.  Inmates who refuse to participate in the Inmate Financial Responsibility Program.

e.  Inmates who refuse to participate, withdraw, are expelled, or otherwise fail to meet attendance and examination requirements in a required Drug Abuse Education Course.

f.  Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement.

g.  Ordinarily, inmates serving sentences of six months or less.

h.  Inmates who refuse to participate in the Institution Release Preparation Program.

i.  Inmates who pose a significant threat to the community. These are inmates whose current offense or behavioral history suggests a substantial or continuing threat to the community.

Examples are inmates with repeated, serious institution rule violations, a history of repetitive violence, escape, or association with violent or terrorist organizations.

To determine whether an inmate poses a significant threat, a number of factors must be considered.  The key consideration is public safety when assessing the inmate's proclivity for violence or escape against their placement needs.

A waiver of the Public Safety Factor is not required for inmates transferred via unescorted transfer to CCC placements.

Ordinarily, inmates with a single incident of violence should not automatically be excluded from CCC placement.  As noted earlier, clearly dangerous inmates should be excluded from CCC placement.

(1)  When there exists a basis for significant doubt regarding whether the inmate currently poses a threat to the community, the Warden should consider contacting the Chief USPO in the release district (see the Sample letter (Attachment A)) to seek guidance on the referral's appropriateness.  A copy of this letter shall be maintained in the Inmate Central File.

(2)  When an inmate is excluded under this subsection, a memorandum, signed by the Warden, shall be prepared and placed in the Inmate Central File to explain the rationale for exclusion from CC Programs.

j.  Inmates whose admission and release status is pretrial, holdover, or detainee.

11.  REFUSALS.  When an eligible inmate refuses CCC placement, staff shall investigate the inmate's reasons.  Staff may honor an inmate's refusal of CCC placement.

Suitable reasons to decline placement might include previous CCC failure, potential conflict with other residents, and location or remoteness from release residence.  When the inmate does not present a suitable reason, and the unit team believes that a placement would serve a correctional need, the unit team shall make every effort to encourage participation.

When an inmate refuses placement, a memorandum, signed by the Associate Warden (Programs) and the inmate, shall be placed in the Inmate Central File.  The memorandum should document the inmate's rationale for refusal and all unit team effort to encourage participation.

12.  CCC REFERRAL PROCEDURES.  Normally 11 to 13 months before each inmate's probable release date, the unit team shall decide whether to refer an inmate to a Community Corrections program.

Medical staff shall notify the inmate's Case Manager promptly when a pregnancy is verified.  Upon notification, the unit team shall decide if a MINT referral to a Community Corrections program will be made.

a.  Referral to CCM.  Staff shall use the Institution Referral form (BP-210) (Attachment B) when referring an inmate for transfer to a CCC.  Information included in the Additional Information (11) and Specific Release Preparation Needs (12) sections must be as specific as possible regarding the inmate's needs.

Attachment B contains instructions for completing the Institution Referral form and related materials.  Signed copies of the "Community Based Program Agreement" must be included with all CCC referrals.  The Warden is the final decision-making authority for all CCC referrals the unit team recommends.

If the Warden approves the CCC referral, the unit team shall forward two copies of the Institutional Referral form and appropriate attachments to the CCM.  Staff shall enter the DST SENTRY assignment of "W CCC ACT."  Copies of appropriate documents are prepared so that one may be forwarded to the CCC while the CCM retains the other for reference.

A separate packet with appropriate copies shall be forwarded to the Transitional Services Manager (TSM) in the **receiving region where the inmate is being released** for graduates of Residential Drug Abuse Programs. Staff are referred to the Drug Abuse Programs Manual for responsibilities and/or documentation requirements. If the CCC referral packet is mailed prior to completion of the Treatment Summary and Referral form (BP-549), the Drug Abuse Treatment Coordinator shall forward the completed BP-549 form to the Transitional Services Manager in the region of the inmate's release and provide a copy to the unit team.

The referral packet shall be forwarded to the CCM at least 60 days prior to the maximum recommended range or date. However, additional time may be required for processing inmates with special community-based program needs (i.e. mental health, drug transition, disabilities, and inmates with higher security needs).

For MINT referrals, the referral packet shall ordinarily be forwarded to the CCM at least 60 days prior to the recommended date. If the inmate is committed to Bureau custody or arrives at the designated facility at any stage during the second trimester of pregnancy, the referral shall be forwarded to the CCM as quickly as possible.

If an inmate is scheduled for release via parole, and CCC placement is for 45 days or less, a copy of correspondence directed to the U.S. Parole Commission (USPC) outlining the release plan and requesting parole certificates, as well as copies of the USPO's letter recommending release plan approval, must be included in the referral package.

b. Mandatory CCC Residence. When an inmate must reside in a CCC as a condition of parole, mandatory release, or supervised release supervision after release from confinement, the institution shall refer the case to the appropriate CCM, who shall refer the case for placement under these procedures:

Institutions shall notify the USPC of cases that cannot be placed (see specific information in Attachment B). Inmates in this category should not be referred for transitional purposes and have this time "stacked" on to the Court or USPC's ordered period of CCC placement.

Inmates releasing from an institution via 3621E CMPL or 4046C CMPL, or who have mandatory CCC residence as a condition of parole, mandatory release, or supervised release supervision, should be referred for release preparation transfer to a CCC, and

the CCM should work with U.S. Probation to waive the CCC
requirement during the period of supervision.  The CCM shall
attempt to affect the 180 day release preparation placement for
inmates releasing via 3621E CMPL or 4046C CMPL.  The CCM shall
keep the appropriate U.S. Probation Office apprised of the
inmate's progress toward reaching the goals of Community
Corrections programming.  Should the USPO still require CCC
placement as a condition of supervision, the CCM will ordinarily
honor the request.

    c.  <u>Referral to CCC</u>.  CCMs shall immediately forward referrals
to appropriate CCCs.  CCC staff shall notify CCMs in writing of
acceptance or rejection.  When referrals are accepted, CCCs will
send acceptance letters, subsistence collection agreements, and
CCC rules and regulations to inmates in care of their Unit
Managers.  Institution staff shall ensure acknowledgment forms
are returned to CCCs.  CCMs shall monitor referrals for timely
response from contractors.

    d.  <u>CCC Rejection</u>.  CCC staff must provide specific reasons, in
writing, to CCMs when they reject referrals.  In such cases, CCMs
shall determine if further discussion with the CCC staff is
appropriate or, if not, referral to an alternate resource is
possible.  When all placement options have been exhausted, the
CCM shall inform the referring institution Warden, with copies to
the Unit Manager, that the inmate cannot be transferred to a CCC
and the reason for rejection.

    e.  <u>Transfer Date</u>.  When CCMs are notified of an inmate's
acceptance by a CCC, a transfer date to the CCC is to be
established, and the CCM shall enter the SENTRY destination
assignment transaction.  The effective date shall be the approved
future transfer date.

    Destination assignments, "DST," have been established in SENTRY
for contract CCCs and work release programs.  These assignments
use the CCM facility code followed by the contract location code.
CCMs may add their contract location destination assignments for
inmates in any Bureau facility.  When an inmate arrives at the
CCC and is admitted to the location (in SENTRY), the destination
assignment is automatically removed.

    These assignments shall appear on the CCM and institution
SENTRY daily log.  Institution staff may display rosters of
inmates approved for CCC transfer, and CCMs may display lists of
pending arrivals by contract location.

    The location description (name of the CCC) shall appear on the
inmate's profile.  If, for any reason, an inmate cannot be

transferred to a CCC on the scheduled date, institution staff shall notify the CCM immediately.

13.  <u>PREPARATION FOR TRANSFER</u>

a.  <u>Trust Fund Account</u>.  No later than **three weeks** prior to the approved transfer date, unit staff are to determine the amount in the inmate's trust fund account that may be given to the inmate at the time of transfer.  A check or draft for the balance (with the inmate as payee) shall be sent to the CCC immediately.

In accordance with the Program Statement on Telephone Regulations for Inmates, inmates transferring to CCCs shall be qualified as "exception" cases during the three-week period prior to the approved transfer date for purposes of placing collect telephone calls.

Institution staff should use discretion in giving inmates large amounts of cash, and if there is reason to question an inmate's ability to handle money responsibly, the amount may be reduced.

For inmates who have no funds or resources, unit staff shall determine the extent to which a gratuity is indicated and shall initiate paperwork, if appropriate (see the Program Statement on Release Gratuities, Transportation, and Clothing).

If the institution is holding savings bonds for an inmate, or if an inmate has a savings account at a local bank, the unit staff is to ensure these financial resources are available at the release destination when the inmate arrives.

b.  <u>Documentation to CCC</u>.  No later than **two weeks** prior to an inmate's approved transfer date, institution staff shall forward the following documents to the CCC:

(1)  Authorized Unescorted Commitments and Transfers (BP-385), with current photograph;

(2)  Original of the Transfer Order;

(3)  Copy of Furlough Application and Approval Record, with specific travel method and itinerary;

(4)  Receipt for CCC rules and regulations, if applicable (this may include the CCC's subsistence agreement form); and,

c.  <u>Clothing</u>.  No later than **one week** prior to an inmate's approved transfer, staff shall make arrangements for release

clothing.  Suitable release clothing shall be provided as
described in the Program Statement on Release Gratuities,
Transportation, and Clothing.  For non-MINT referrals, at a
minimum, release clothing is to include adequate clothing to
complete a job search and perform work.  Additionally, an outer
garment, seasonably suitable for weather conditions at the
inmate's release destination, shall be provided.

   d.  Medication.  No later than **one week** prior to an inmate's
approved transfer, Health Services staff shall review the
inmate's medical record to determine if the inmate is on
continuous medication.  When an inmate is transferred to a CCC, a
30-day supply of chronic medication shall be provided pursuant to
a new prescription.  If an inmate is prescribed a controlled
substance, assistance from the CCM may be required to determine
if the CCC can accommodate the inmate's special medication needs.
Staff should refer to the Health Services Manual for further
clarification.  CCC staff are to safeguard, store, and dispense
controlled substances in accordance with the terms of their
Bureau contracts.

   e.  Identification.  It is essential that each inmate have some
acceptable form of identification while at a CCC.  Therefore,
during Institution Release Preparation Programs, unit staff shall
assist inmates to acquire social security cards (mandatory) and,
if possible, drivers license, and copies of their birth
certificates.  Additional photo identification may be required if
the inmate is using air transportation.  These items may be given
to an inmate on the transfer date, or mailed to CCCs **prior to**
transfer with the materials described in subsection b. above.

   f.  Community Custody Status.  An inmate must be assigned
"COMMUNITY" custody status prior to transfer to a CCC.  Unit
staff shall state the inmate's current custody status if other
than "COMMUNITY" on the Transfer Order in the Custody
Classification section.  Next to the current custody, unit staff
shall type "Community custody effective on (whatever date the
Warden deems appropriate)."

   g.  Parole Commission Review of Disciplinary Action.  An inmate
who has had a discipline hearing resulting in a Discipline
Hearing Officer finding, after USPC action to establish a
presumptive or effective parole date, may not be transferred to a
CCC until the Commission has considered the disciplinary report
and final action has been taken.

   h.  Sentence Calculation.  The Inmate Systems Manager (ISM) of
the sending institution shall ensure that an inmate's old law

sentence computation is "complete" with all appropriate good time entered before the inmate departs the institution.

   i.  Final Review of 3621(e) Eligibility.  The decision to grant an inmate early release is a significant one for the Bureau; therefore, it is essential that unit staff carefully review relevant statutory and regulatory criteria before an inmate's final release under 18 U.S.C. § 3261(e).  Specifically, the Unit Manager or designee must ensure completion of "Final Review of 3621(e) Eligibility" (Attachment K from the Drug Abuse Programs Manual),  before unescorted transfer to a CCC or release to a detainer (Drug Abuse Programs Manual, Inmate).  Attachment K must be completed and routed to the Warden.  Ordinarily, Attachment K should be routed to the Warden along with other CCC release paperwork (i.e., transfer order, furlough application, etc.); however, a copy of Attachment K is not forwarded to the CCC.

   The Drug Abuse Program (DAP) Coordinator and CMC must review and sign Attachment K prior to the Warden's review.  The DAP Coordinator's review is to ensure that items 5, 7, and 8 are accurate.  Once Attachment K is signed and dated, the Unit Manager must ensure that a copy is filed in the disclosable portion of Section 5 (release processing) in the Inmate Central File.  The original Attachment K shall be forwarded to the ISM for filing in the Judgment and Commitment (J&C) file.

   **No inmate shall be released from an institution to a CCC (or detainer) until the ISM receives the Attachment K with appropriate signatures.**

   j.  Education.  To assist an inmate in securing employment, the inmate should have a resume', a copy of his or her education transcript, GED certificate, and any other education/vocational training certificates completed during his or her confinement.

   k.  Exemption from Time Requirements.  When transfer dates have not been established in time for staff to implement the above procedures within the time requirements, they shall be accomplished as soon thereafter as possible.

14.  TRANSFER AND ARRIVAL NOTIFICATION

   a.  Transportation Costs.  Staff are referred to the Program Statement on Furloughs for procedures regarding transportation costs for inmates scheduled for transfer to a CCC.

   b.  Notification of Travel Schedule.  On the date of transfer, the sending institution's ISM shall notify the CCM via BOPNet

GroupWise of the inmate's departure and travel schedule.  A copy
of this notification shall be placed in the inmate's J&C file.
If GroupWise is inoperable, the notification shall be made by
telephone and documented in the J&C file.

   c.  <u>Arrival Notification</u>.  CCC staff shall notify CCMs
immediately when an inmate arrives as a transfer from an
institution.  Immediately means:

      (1)  Upon arrival, if during regular CCM working hours; or

      (2)  At the first opportunity during regular CCM working
hours if arrival is during evenings, weekends, or holidays.

   d.  <u>Electronic Notification</u>.  By close of the business day
following an inmate's scheduled arrival, the CCM shall "admit"
the inmate in SENTRY, if the CCC has confirmed the inmate's
arrival.  When GroupWise is inoperable, notification of arrival
shall be made by telephone to the sending institution's ISM, and
the inmate "admitted" in SENTRY at the earliest opportunity.

   e.  <u>Escape</u>.  If an inmate has not arrived at the CCC within a
reasonable period after the scheduled arrival time (no later than
24 hours), the CCM shall report the inmate as an escapee.  Then,
the ISM at the sending institution must be notified immediately
by telephone or GroupWise.

   The ISM at the sending institution is responsible for updating
SENTRY to indicate the change in release status from "furlough
transfer" to "escape" as of the date the inmate fails to report.
The ISM at the sending institution also shall make the inmate's
sentence computation inoperative as of the date following the
escape.  Staff at the sending institution shall write an incident
report and conduct a UDC/DHO hearing in absentia.  The sending
institution shall make all notifications required by the Program
Statement on Escapes/Deaths Notification.  The ISM at the sending
institution shall also notify the FBI of the inmate escape.  The
ISM at the sending institution must also fax a copy of the Notice
of Escaped Federal Prisoner (BP-393) to the FBI, U.S. Marshals
Service, local law enforcement officials, and law enforcement at
the inmate's home of record.  The Inmate Central File is to be
retained at the sending institution.

   The CCM shall notify the U.S. Marshals Service in the CCC
district.  The CCM shall also notify the Regional Director, the
Central Office, and the sending institution via GroupWise of the
escape.

   f.  <u>Arrival Confirmation</u>.  The ISM at the sending institution

PS 7310.04
12/16/98
Page 20

shall use SENTRY to confirm an inmate's arrival at a CCC.  When
an inmate's arrival is confirmed, the ISM shall forward the
following documents to the CCM by certified mail:

(1)   Applicable release forms and certificates that have been completed insofar as is possible by unit staff and reviewed by ISM;

(2)  Victim/Witness Notification form (BP-323), if applicable;

(3)   Completed and current committed fine forms and all related documentation such as the PSI, if applicable;

(4) Copies of conditions of supervised release, if applicable; and

(5) Appropriate forms and other documentation concerning final good conduct time awards for an inmate sentenced under the CCCA.

15.   INMATE CENTRAL FILE.   The Inmate Central File shall be retained at the institution consistent with provisions established in the Program Statement on Inmate Central File, Privacy Folder, and Parole Mini-files.


                              /s/
                              Kathleen Hawk Sawyer
                              Director

```
                                        PS 7310.04
                                         12/16/98
                                      Attachment A
```

Sample letter for Wardens to send to Chief USPOs

John Jones, Chief USPO
Judicial District
Street Address
City, State  Zip Code

Re:  Doe, John
Reg. No.:  12345-678

Dear Mr. Jones:

    The above-noted inmate will complete his/her sentence on
_____ and is being considered for referral to a
Community Corrections Center (CCC) on or about _____
for prerelease services.  Because of certain factors in this
offender's case, we are closely reviewing his/her appropriateness
for CCC placement.  Therefore, I am soliciting your view in this
matter recognizing that your office will soon be responsible for
supervising this offender in the community.

    Please indicate below whether or not you favor release
through a CCC for this offender.  Feel free to attach additional
comments.  If you favor release through a CCC, I ask that you
consider providing some assistance in initiating the supervision
process while the offender resides in the CCC.  Please return
this letter as soon as possible so that release planning can be
finalized.

    Thank you for your assistance in this matter of mutual
concern.

                            Sincerely,

                            Warden

    _____     Yes, I favor referral to a CCC for
                         prerelease services.

    _____     No, I do not favor referral to a CCC.

Comments:_____

_____

                    _____
                    Chief USPO
                    District
                    _____
                    Date

PS 7310.04
12/16/98
Attachment B, Page 1

Please refer to the latest issuance of BOPDOCS for a copy of BP-S210.073,
**INSTITUTIONAL REFERRAL FOR CCC PLACEMENT.**

PS 7310.04
12/16/98
Attachment B, Page 2

**INSTRUCTIONS FOR COMPLETION OF INSTITUTIONAL REFERRAL FOR CCC PLACEMENT**

All federal institutions shall use the standard form "Institutional Referral for CCC Placement", BP-210, when referring inmates for community corrections placement in any type of community program.

The following instructions will be followed when completing the form:

**GENERAL INFORMATION:**

♦ Use the current EMS Community Corrections Directory (BOP COMM CORR DIR) or BOPDOCS Community Corrections Directory to determine the appropriate CCM.

♦ All referrals shall be signed by the Warden.

♦ Provide the inmate's full committed name and register number. The inmate's unit should also be included.

♦ Identification of Unit Manager and GroupWise mailbox codes will expedite notification.

♦ Institution name and mailing address allows CCC staff to send materials directly to the unit manager.

**SPECIFIC INFORMATION:**

1. Indicate the inmate's city of residence upon release. A complete address should be included in current progress report. Indicate the federal district of supervision.

2. The ISM shall insure the anticipated release date provided on the referral includes all eligible good time earnings. The date should be an accurate <u>estimate</u> of the date the inmate is to be released from custody. If release is by parole, only the parole date needs to be indicated. At the time of this review, the ISM will insure there are no detainers that would prevent CCC transfer.

3. Staff specifying a recommended placement date shall further indicate that the CCM should not adjust that date. (Include this information in Item 12.) CCMs shall adhere to the recommended date, with any adjustment only being downward due to budget or bedspace constraints as a factor.

For MINT referrals, staff should provide a specific date of
placement, which is normally two months prior to the requested
delivery date.  Planned periods of longer than six months require
the Regional Director's approval and the Chief U.S. Probation

Officer in the inmate's sentencing district to determine whether
the judge concurs with the placement.  (Include this information
in Item 12.)

4.   Indicate the date the report was submitted and attach a copy
of any transmittal memo to the USPC.

5.   An inmate who has been scheduled for a statutory interim
hearing may not be transferred to a CCC until after the hearing
or unless the inmate waives the hearing.  If neither is the case,
the CCM will hold the referral in abeyance until the matter is
resolved.  This information should be included in item 11.

6.   Offenders sentenced under the Sentencing Reform Act or the
Anti-Drug Abuse Act may have a term of supervised release
following confinement.  Offenders convicted of drug offenses may
have a Special Parole Term.

7.   Indicate if the inmate has "aftercare" requirements (must be
imposed as a supervision condition by the U.S. Parole Commission,
or the sentencing court).  This helps the CCM select the most
appropriate facility.

8.   If the inmate is a Central Inmate Monitoring case, the Warden
has clearance authority on all CIM cases with the exception of
WITSEC cases.  The Inmate Monitoring Section, Central Office will
provide CIM clearance for WITSEC cases.

9.   If the area of referral is not the sentencing district, staff
will forward release planning materials to the probation office
in the proposed district of supervision.  Institution staff
should refer to the Operations Memorandum on Release Planning,
Inmate - Memorandum of Understanding (MOU) Between the BOP and
the Administrative Office of the U.S. Courts for further
instructions.  At the time of the unit team's recommendation for
CCC placement, the case manager should submit release plans to
the USPO if other than the sentencing district.  A relocation
acceptance letter should be included in the CCC referral packet.
Additionally, for inmates releasing in their sentencing district,
a copy of the proposed supervised release plan with the final
progress report shall be forwarded to the probation office in the
sentencing district for verification of residence and employment.